TISCHENDORF, Appellant, vs. LYNN MUTUAL FIRE INSURANCE COMPANY, Respondent.

*February 9—May 11, 1926.*

*Insurance: What constitutes insurable interest: Farm leases: Interest of lessor in crops: Lien or ownership not necessary to insurable interest: Policy insuring ownership interest only: Construction and effect.*

1. Under a lease of a farm for a period of years without reservations or limitations as to the title to the crops, the lessee takes an absolute title and the owner parts with an insurable · interest therein; but the landlord, by an agreement in the lease, express or implied, may retain the title to the crops, an interest in, or a lien thereon for the payment of the rent to become due.  p. 37.

2. One has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction, though he has no title in, a lien thereon, or possession of the property.  p. 38.

3. The lease in this case, providing for payment of the rent when the tenant sold the hay, when properly·construed is *held* to retain an insurable interest in the hay in the lessor, who knew when the lease was executed that the tenant was without other means to pay the rent.  pp. 41, 42.

4. In construing a particular provision in an insurance policy, other provisions therein and the entire policy should be considered to ascertain the true intent.  p. 41.

5. Under a fire policy containing a provision as to the interest of the mortgagee or others in the subject of insurance, and a provision that the insurer was not liable for any loss of or damage to property not owned by the insured at the time thereof, the insurer was not liable if the insured was not the owner of the property at the time of the loss, though he retained an insurable interest therein.  p. 42.

6. The rule of strict construction against insurance companies
   cannot be resorted to for the purpose of modifying a clear
   and unambiguous contract or of creating a new contract.
   p. 42.

APPEAL from a judgment of the circuit court for Clark
county: E. W. CROSBY, Circuit Judge. *Affirmed.*

The appeal is from a judgment in favor of the defendant
dismissing plaintiff's complaint with costs.

On the 30th day of April, 1924, the plaintiff, being the
owner of a ninety-acre farm in the town of Mayville, in
Clark county, executed a lease of said farm to one Luloff
for a period of three years, the lessee agreeing to pay to
the plaintiff as rental the sum of $500 per year. The lease,
among other things, contained the following provision:

"The rent is to be paid when the party of the second part
sells the hay, which must be sold on or before March 1st
each year; . . . and the party of the second part does
promise and agree to pay said rent at the time and manner
aforesaid, during the continuance of said term. . . . If
the party of the second part shall fail to pay the rent afore-
said, at the times expressed in this lease, then the party of
the first part may enter on and expel the party of the second
part from said premises, and said party of the second part
shall be held to have forfeited such rent as he shall have paid
hereunder and shall be liable to said party of the first part
for such payment or payments of rent hereunder which are
then due and unpaid, and it is stipulated that in case the
premises should be sold during said term, then in that case
the party of the first part may terminate and cancel this
lease by giving a notice of thirty days to party of second
part, who shall thereupon vacate the premises according to
such notice, after party of the first part makes satisfactory
settlement as to crops."

On the 23d day of September, 1923, the plaintiff procured
a policy of insurance in the defendant company, for three
years, for the sum of $8,500, $1,000 of such amount being
insurance on hay, grain, and fodder in buildings and stacks

on premises.   Immediately upon the execution of the lease
the tenant, Luloff, went into possession of the premises, and
on the 26th day of September, 1924, some of the buildings
were destroyed by fire, and also a quantity of hay, of a
value in excess of $500.   After the fire the plaintiff, with
the consent of the tenant, had inserted the following provi-
sion in the lease: "The rent shall be paid out of the first hay
sold, and the first party shall hold title thereto as security
until paid."   .

On the trial of the action the plaintiff prayed, among
other things, for a reformation of the lease; that the lease
as executed did not fully or properly express the intention
of the parties; and that it was understood by them when
the lease was executed that a provision like the one inserted
after the fire had been included therein.   The plaintiff testi-
fied, among other things, as follows:

"We [meaning the witness and the tenant] had agreed
that the first hay sold belonged to me for the rent.   If that
was not actually written in the lease, I didn't know it.   I
can't read it.   I surely thought that was in there, we agreed
to that."

He also testified that it was agreed that he was to hold
the hay as security for the rent until the rent was paid.   He
also testified adversely, before the trial, that Luloff and his
wife had come to his farm and asked him how much rent
he wanted, and that they came to an agreement that the farm
was to be rented for three years at $500 a year; that at no
time prior to the fire, although he had met Mr. Steinwand,
the agent of the insurance company, had he informed him
that he claimed a lien on the hay to secure his rent.   Plaint-
iff also testified that he was to get his $500 first, and that
no hay could be sold until he had his $500 rent.

Luloff, among other things, testified that the hay be-
longed to the plaintiff until the $500 was paid out of it.
One Sorenson, the banker who drew the lease, testified that

the lease was written in accordance with instructions given him by Luloff after a conference with the plaintiff, and he interpreted the lease in the form in which it was drawn, to the effect that the rent was to be paid out of the proceeds of the hay. Not all of the hay raised was destroyed by the fire, and it appears from the undisputed evidence that of the remaining hay $69 worth was sold by the tenant and that he retained the proceeds, and that no request was made of him by the plaintiff for the amount so realized. It also appears from the evidence that during the negotiations between the parties prior to the execution of the lease nothing whatever was said with respect to insurance, or that a destruction of the hay by fire was even contemplated.

The court, upon the trial, ruled liberally in favor of the plaintiff, and admitted all of his offered testimony and the testimony of his witnesses, in order to form the basis for a reformation. It further appears that the tenant had no means out of which to pay the rent excepting what he derived from the crops raised on the farm.

At the conclusion of the trial, in an opinion rendered and filed by the learned trial judge, he found that the testimony of both the plaintiff and Luloff on the subject of the proposed reformation was an afterthought, and devised in order to strengthen plaintiff's case. He based his opinion, in part, upon the failure of the plaintiff to make any claim upon his adverse examination to the effect that he either retained the title to the hay until the rent was paid, or that he had a lien upon the hay; that the parties at the time of entering into the lease did not discuss the subject of the destruction of the hay by fire or the subject of insurance, and that the matter was not in contemplation of the parties at that time; that after the fire a large quantity of hay which had not been burned was sold by the tenant, who collected the proceeds and did not account for the same to the plaintiff; and that such proceeds were retained with the

·knowledge and consent of the plaintiff, thus showing by the conduct of the parties that the matters involved in the issue as to the reformation were an afterthought.   He also held that when the lease was executed the plaintiff surrendered the farm to the lessee, and that the hay crop raised thereon belonged to the lessee absolutely, and that the plaintiff retained no title or interest therein; that the plaintiff depended solely upon the promise of the tenant, as contained in the lease, to pay the rent at the time stipulated therein; and that the provision in the lease which provided for the payment of the rent at the time when the hay should be sold, and not later than the 1st day of March in each year, merely fixed a time when rent should become due and payable.

Appropriate findings were thereupon made and filed, and upon such findings judgment was rendered in defendant's favor as above indicated, from which judgment the plaintiff has prosecuted this appeal.

For the appellant the cause was submitted on the brief of *Herman Leicht* of Medford.

For the respondent there was a brief by *Rush & Devos* of Neillsville, and oral argument by *W. J. Rush.*

DOERFLER, J.   At the time the lease was executed, the plaintiff, under the fire insurance policy from the defendant, had a coverage of $1,000 on the hay.   Had he at that time sold the hay then upon the farm or the hay to be raised in the future, the same would then cease to be covered by the policy on account of the change in ownership.   It is the established rule that where an owner of a farm executes a lease of the same for a period of years, there being no reservations or limitations in the lease as to the title to the crops, the lessee takes an absolute title, with the result that the owner also parts with an insurable interest in such crops. *Layng v. Stout,* 155 Wis. 553, 556, 145 N. W. 227.   The landlord, however, may by an agreement in the lease, express

or implied, retain the title to the crops or an interest in the crops, or a lien thereon, for the payment of the rent to become due (*Andrew v. Newcomb,* 32 N. Y. 417; *Smith v. Atkins,* 18 Vt. 461; *Whitcomb v. Tower,* 12 Met. (53 Mass.) 487); and, as .is said in the *Layng Case,* "The rule announced in these decisions is approved in *Lanyon v. Woodward,* 55 Wis. 652, 656, 13 N. W. 863, and in *Rowlands v. Voechting,* 115 Wis. 352, 356, 91 N. W. 990."

The question therefore arises in the instant case whether the plaintiff, in leasing his farm, retained either the title to the crops, an interest therein, or a lien upon the same, so that it might be said that he had at the time of the fire an insurable interest in the hay. In 14 Ruling Case Law, 910, 911, it is said:

"It may be said, generally, that any one has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. It is not necessary, to constitute an insurable interest, that the interest is such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence. . . . The term 'interest' . . . does not necessarily imply property in the subject of insurance, and neither the title nor a beneficial interest is requisite."

This quotation is amply supported by the numerous authorities that appear in the notes. This has also been declared the law in Wisconsin in the case of *Horsch v. Dwelling House Ins. Co.* 77 Wis. 4, 7, 45 N. W. 945, where the legal principles announced are fortified by quotations from the leading standard works on insurance. See, also, *Harrison v. Fortlage,* 161 U. S. 57, 16 Sup. Ct. 488.

An insurable interest is nowhere better defined than in the opinion in the case of *Getchell v. Mercantile & Manufacturers' F. Ins. Co.* 109 Me. 274, 83 Atl. 801, where it is said:

"The term 'insurable interest' has been defined in somewhat varying terms yet with substantially uniform meaning.

Tischendorf v. Lynn Mut. F. Ins. Co. 190 Wis. 33.

The scope of the rule that only an insurable interest can be legally insured may be determined in some measure from the reason that created it. It was this: A contract of insurance is a contract of indemnity, the object being to reimburse the insured for his actual loss not exceeding an agreed sum. Wagering policies are forbidden as against public policy. A. should not be allowed to insure for his own benefit B.'s property in which A. has no concern and by the loss of which A. would not be directly and financially affected. To hold otherwise would be to increase the moral hazard and to permit one man to profit by the losses of another. The crucial question therefore is, Will the insured be directly and financially affected by the loss of the property insured? If so, he has such an interest as the law will recognize. . . . We find, therefore, as we would expect, the term defined in broad and comprehensive language: 'If such a relation exists between the assured and the property that injury to it will, in natural consequence, be a loss to him, he has an insurable interest therein.' *Wilson v. Jones,* L. R. 2 Exch. 139. 'Any person has an insurable interest in property by the existence of which he receives a benefit or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of, the property itself.' *Eastern R. Co. v. Relief F. Ins. Co.* 98 Mass. 420, 423. 'If a person has such an interest in property that he will suffer pecuniary loss by its destruction, he has an insurable interest.' *Wainer v. Milford M. F. Ins. Co.* 153 Mass. 335, 26 N. E. 877. But no more comprehensive definition has been given than by this court in *Gilman v. Dwelling-House Ins. Co.* 81 Me. 488, 17 Atl. 544, where the language is as follows: 'It may be stated as a general proposition, sustained by all the authorities, that whenever a person will suffer a loss by a destruction of the property he has an insurable interest therein.' "

Barring, therefore, the claim of the plaintiff that the lease as executed does not express the agreement of the parties and that the agreement should be reformed as prayed for, did the lease in its original form, when properly construed, retain in the plaintiff an insurable interest in the hay?

The tenant was a renter, and had no means with which to pay his rent excepting those derived from the sale of the

crops.  This fact was known to the plaintiff when the lease
was executed.  The farm consisted of ninety acres of agri-
cultural lands, of which eighty acres were devoted and
adaptable to raising hay.  The remaining ten acres were
utilized in raising such crops as were necessary to supply
the immediate wants of the tenant and his family.  There-
fore it may be logically and reasonably inferred (and, in
fact, the testimony hardly permits of any other inference)
that the plaintiff looked to the proceeds of the hay for his
rent.

We do not consider that the testimony warrants a con-
clusion that the plaintiff retained title to the hay, or even
a lien upon the hay or upon the proceeds derived from a
sale thereof; nor is a conclusion to that effect, under the
authorities above cited, necessary in order to establish an
insurable interest in the plaintiff.  Outside of the ability
afforded to the tenant to pay his rent upon the sale of his
hay crop he was absolutely impecunious, and through the
happening of unfortunate incidents, such as a failure of
the crop, or the destruction of the same by fire without
insurance, the plaintiff would sustain a complete damage,
to the extent of the amount of the rent.  This explains quite
clearly what the parties to the lease had in mind when it
was executed, when they agreed upon a time when the rent
would become payable.  Had the lease merely provided that
the rent should become payable on the 1st day of March dur-
ing each year of the tenancy, we would be constrained to
hold that the plaintiff retained no insurable interest in the
hay.  But this the parties did not do.  If it appeared by the
evidence in the case that the tenant was a man of means
so as to enable him to make payment of the rent from other
sources, we might readily infer that the provisions in the
lease merely fixed a convenient time for the payment of the
rent.  However, the undisputed evidence in the case shows

that this was not so, and that both parties looked to a sale of the crop for the creation of a fund out of which the tenant could discharge his obligation.  The destruction of the entire hay crop by fire would wipe out the very asset which the tenant had, and which was available to him to meet his rent indebtedness.

The defendant was a mutual company.  We have carefully examined the insurance policy and the by-laws indorsed thereon.  It is not in accordance with the statutory form of standard policies.  It does, however, contain these provisions (lines 42–46) :

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any other person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the condition heretofore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written or printed herein."

Lines 79–83 : "It is understood and agreed by the applicant that the company is not liable for and will not pay any loss or damage to property not owned by the insured at the time of loss or damage thereto, but it shall remain (if not otherwise void)  valid as to any other property therein mentioned. . . ."

In construing a particular provision in a policy, other provisions, and in fact the entire policy, should be considered, in order that the true intent may be ascertained. The provision contained within lines 42–46 is substantially in accordance with the ordinary form contained in fire insurance policies, and its purpose is to cover interests other than those of the insured, under certain conditions.  The main purpose of the provision contained within lines 79–83 is to confine the interest of the insured to property of which he is the owner at the time of the fire.  These two quoted pro-

visions, therefore, when considered together and properly construed, cover every defined interest which the insured or any other person may have under the policy at the time of the loss.

The subject of insurance consists of the property covered. Liability on the part of the company for indemnity can only attach where the property insured is either damaged or destroyed by the casualty insured against. The parties, under the provisions of the policy, by express and definite agreement have seen fit to confine the liability of the company to a loss or damage to property owned by the insured at the time of loss or damage, which clearly means that if at the time of the loss the insured is not the owner of the property the company cannot be held liable, whether or not the insured still retains an insurable interest. The liability of an insurance company is based upon a contract entered into between the parties and must be governed by the provisions thereof, and, where such provisions are clear and unambiguous, the rule of strict construction against insurance companies cannot be resorted to for the purpose of modifying the contract or of creating a new contract.

It has been said of conditions in an insurance contract such as are contained within lines 79–83, that "such conditions are not forfeitures or penalties, or in the nature thereof, but fix the extent of insurer's liability." 26 Corp. Jur. 229; *Savage v. Howard Ins. Co.* 52 N. Y. 502.

The second paragraph above quoted differs materially from that contained in the policy involved in the case of *Hitchcock v. Northwestern Ins. Co.* 26 N. Y. 68. In that case the provision read as follows:

"The interest of the assured in this policy, or in the property insured thereby, is not assignable unless by the consent of this corporation, manifested in writing, and in case of transfer or termination of any such interest of the assured,

either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect."

In the opinion of the court in that case it was held:

"As the special clause relied upon operates by way of forfeiture, it is to be construed strictly, and the 'transfer or termination' of interest in the property, in order to make void the policy, must be a transfer or termination of the whole *insurable interest* of the assured in such property. *Any change of the title which does not deprive the assured of insurable interest does not work that result.*" (Italics ours.)

So that in the *Hitchcock Case,* while the insured parted with the title of the property he still retained an insurable interest, which the court, under the rule of strict construction involved, held was kept alive for the benefit of the insured. In the instant case the assured also parted with the title to the hay and retained an insurable interest therein. The vital difference between the two cases consists in the wording of the policy provisions. In the instant case it was expressly agreed in the policy that "the company is not liable for and will not pay any loss or damage to property not owned by the insured at the time of loss or damage thereto." So that, under the facts in this case, the insured having parted with the title to the property to his tenant, and while he still retained an insurable interest in the subject of the insurance, he effectually barred himself from enforcing such insurable interest when he agreed to a provision which relieved the company of liability from any loss or damage to property not *owned* by the insured at the time of the loss or damage thereto. It would appear to us that the parties had in mind precisely such a situation as is presented in the instant case when they agreed to the latter provision of the policy above stated. In its meaning it is quite as clear and effective as lines 20–31 of the standard policy in ch. 203 of the Statutes.

In resorting to the rule of strict construction courts have arrived at varying conclusions, which do not always harmonize with the plain and ostensible language of the instrument, and there are few questions involving construction which disclose a greater variance in opinion in the decisions of the various appellate courts.

The finding of the trial court that the defendant had no notice whatsoever that the property was leased to Luloff is amply sustained by the evidence, as is also the holding of the court that the evidence does not warrant a reformation of the lease.

The judgment of the lower court must therefore be affirmed.

*By the Court.*—Judgment affirmed.