**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**J. B. COBB, Appellee.**

Court of Appeals of Kentucky.

Sept. 30, 1955.

Rehearing Denied June 15, 1956.

J. Wirt Turner, Jr., and M. J. Jones, Jr., New Castle, Jack Q. Heath, Louisville, for appellant.

John M. Berry and D. K. Floyd, New Castle, for appellee.

CLAY, Commissioner.

This suit was brought by appellant insurance company to recover $3,000 allegedly paid to appellee because of misrepresentation and mistake. The case was tried by the court without a jury and appellant's complaint was dismissed.

Appellee applied for fire insurance on a dwelling house located on property purchased at a judicial sale by one Henderson. According to appellee's testimony, he advised appellant's agent that the property had been purchased jointly with Henderson, and the policy was issued. When a loss occurred several months later the company paid appellee the face amount of the policy. Upon discovering that he did not own any interest in the property, this suit was brought to recover the amount paid.

Appellant contends appellee falsely stated in his application and in his proof

of loss that he was the "sole and unconditional owner" of the property. Appellee testified that appellant's agent wrote down the answers to the questions on the application and the proof of loss, and that he had not misrepresented the facts. We believe the trial court correctly found appellee did not represent to appellant that he was the sole and unconditional owner, and liability on the policy may not be avoided on that ground.

More serious questions are presented as to whether or not appellee had an insurable interest in the property, and whether or not appellant insured such insurable interest.

It is undisputed that appellee was a surety on the bond executed for the purchase price of all the property bought at the judicial sale by Henderson, including the dwelling house involved. The parties discuss at length in their briefs the question of whether or not a surety on a bond for the purchase of real property has an insurable interest in the property, in view of the provisions of KRS 304.651. It is unnecessary to decide that question, for, even assuming that a suretyship interest is insurable, appellee's own testimony convincingly establishes that appellant did not undertake to insure that type of interest. Appellee testified as follows:

"Q. What did you say to Mr. Singleton (appellant's agent) when you went to him for this insurance? A. Well, I discussed—told how we had bought it here at the Courthouse door and went —I really went over to pay for it, but I learned that I couldn't, so we went on and signed these papers, that it has turned out I was surety on the bond.

"Q. Did you tell him the way you had become interested in it was the way in which you have just related here by purchase at the Courthouse door? A. Yes, sir.

* * * * * *

"Q. Tell the court who you intended the property to be deeded to and what per cent? A. I came over here to buy the property with those fellows and I had told them previously that I would have to have controlling interest.

"Q. You intended that part of the property be deeded to you? A. Controlling interest to me.

* * . * * * *

"Q. What did you tell him (appellant's agent), Mr. Cobb, as to your interest in the property? A. I told him we bought it together and that the fellows were worth nothing and that I had to stand for all of it.

"Q. What did you intend to insure, your interest as surety, Mr. Cobb? A. All of my interest, I did not get the technicality as surety, I explained to him and I applied in good faith for insurance and I was granted it.

* * * * ' * *

"Q. At the time you signed the statement of loss you told Mr. Welden (appellant's agent) that you owned only part of the property and the two Negroes owned the other part? A. That is correct. I explained to him just how it was.

* * * * * *

"Q. What was the understanding as to who would be the owner of this property after it was bid in? A. That I would secure title to it. I had explained to them that I would never be in partners with anyone that I did not have controlling interest in any more.

"Q. Who was to receive title to this property? A. I was until it was paid for.

"Q. After it was paid for who was to receive title to it? A. It was to be mine. I was to have 50% or controlling interest in it."

It is clear from other testimony of appellee that he did not realize he had signed the bond as surety until sometime after he had taken out the insurance. At one point in his testimony he denied outright that he was a surety on the bond. At another point he stated he did not know that he had told

the agent about being surety and he said "I doubt if he knew it". It is therefore evident that at the time he applied for insurance appellee believed and represented that he had some ownership interest in the dwelling house, and *an ownership interest is the only thing appellant undertook to insure*. Whether or not he may possibly have had an insurable interest as surety is immaterial, because the controlling consideration is not what insurable interest he had but what insurable interest appellant insured. Crabb v. Calvert Fire Ins. Co., Ky., 255 S.W.2d 990; Tischendorf v. Lynn Mutual Fire Ins. Co., 190 Wis. 33, 208 N.W. 917, 45 A.L.R. 856.

The fact is appellee had no ownership interest in the property. He testified he had some vague oral agreement with Henderson with respect to title, but no terms were specified, and no semblance of an enforceable contract existed. Even if we disregard the statute of frauds, appellee had no legal or equitable interest in this property by virtue of the alleged understanding with Henderson, and he therefore lacked the required insurable interest he had represented. See Niagara Fire Ins. Co. v. Layne, 162 Ky. 665, 172 S.W. 1090; National Union Fire Ins. Co. v. Hall, 233 Ky. 337, 25 S.W.2d 738.

From what has been said above, it is apparent the parties entered into a contract to insure appellee's ownership interest. This was a clear case of mutual mistake, as that interest did not exist. Since the policy was issued and the non-existent loss paid because of this mutual mistake, appellant is entitled to recover from appellee.

It is unnecessary to consider appellant's contention that in any event appellee was not entitled to the proceeds of this policy because he suffered no loss. See 29 Am. Jur., Insurance, Section 1194; Wilson v. Germania Fire Ins. Co., 140 Ky. 642, 131 S.W. 785; Connecticut Fire Ins. Co. v. Smith, 181 Ky. 592, 205 S.W. 585.

Henderson intervened in this action and asserted a claim to the proceeds of the policy. The trial court did not pass upon that phase of the controversy, and we express no opinion concerning it.

The judgment is reversed for consistent proceedings.