Hallows, J.
In a summary-judgment proceeding when the defendant makes the motion and shows his defenses are sufficient to defeat the plaintiff, he is entitled to summary judgment unless the plaintiff by affidavit or other proof shows facts which the court shall deem sufficient to entitle him to a trial. Sec. 270.635, Stats. It has often been stated by this court that if there is a material issue of fact raised by the affidavits or other proof, summary judgment cannot be granted.
The question presented is whether there is any question of fact to be resolved which entitles the plaintiff to a trial. The defendant contends that the language of the policy is clear and unambiguous and only a question of law is presented. The plaintiff contends that the phrase “at his customary place of employment” must be disregarded because it is redundant and inconsistent with other provisions of the policy and the purpose of its issuance; that said phrase as used in the policy is ambiguous and capable of several interpretations and resort therefore must be had to the facts as to the insured’s activities as well as to the negotiations between the parties preliminary to the issuance of the policy to determine the meaning thereof; and that regardless of the phrase, Morris Rabinovitz returned to active work and the performance of all of his duties after the effective date of the policy.
Generally, the construction of the words and clauses in an insurance policy is a question of law. See Bauman v. Midland Union Ins. Co. (1952), 261 Wis. 449, 53 N. W. (2d) 529, involving the word “explosion” in the extended coverage clause of a fire policy in reference to a silo. We stated in Thurston v. Burnett & Beaver Dam Farmers’ Mut. Fire Ins. Co. (1898), 98 Wis. 476, 478, 74 N. W. 131:
“. . . where language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words *550 used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court.”
We do not find the words “at his customáry place of employment” ambiguous. The difficulty comes in applying the apparent meaning of the words to this particular fact situation. Such difficulty in application does not create an ambiguity in the language of the policy even if ineptly drawn.
The plaintiff argues that the clause is redundant and inconsistent with the purpose of and other clauses in the policy. The clause is not inconsistent with Exhibits A and B attached to the affidavits. Exhibit A is a brochure describing the plan in brief to the institute’s members and includes a request form whereby a member of the institute can request a cost estimate of the plan for his employees. The brochure was not an offer by the defendant, or a contract. Exhibit B is an application of the Sheboygan Iron & Metal Company for participation, dated October 21, 1957, to the Scrap Iron & Steel Group Trust and the Travelers Insurance Company, requesting that the three employees in the eligible classifications be insured under the policy to be issued to the trustees, and further stating that in consideration of the granting of this request the Sheboygan Iron & Metal Company agreed to be bound by the terms, conditions, and provisions of the said policy. The application was approved by the Scrap Iron & Steel Group Trust and by the defendant.
We find nothing in these exhibits material to the question of when the group policy should become effective. It is true that no medical examination was required by any employee and is so stated in the plan and in Exhibit B. Such fact is not inconsistent with the clause in the policy requiring an eligible employee to be actively at work performing all of *551 the duties of his employment with the employer member at his customary place of employment on the date his insurance is to become effective. Nor can evidence of the nature of Rabinovitz’s employment be used to create an ambiguity on the theory that the language of the contract does not express its purpose and the meaning understood by the parties thereto. The policy was a master group life policy negotiated by the defendant and the trustees of the Scrap Iron & Steel Institute to cover certain employees of the institute’s members all over the United States and was not negotiated directly with Mr. Rabinovitz or with his employer, the Sheboygan Iron & Metal Company. By the terms of the application for participation, the Sheboygan Iron & Metal Company agreed to be bound by the terms, conditions, and provisions of the policy and to pay all of the premiums. The facts and conditions of Mr. Rabinovitz’s employment are immaterial because the policy was not negotiated and agreed to with such facts in mind. This is not a case where the parties contract in the light of a situation known to both of them.
The clause in this group life insurance policy requiring an employee to be actively at work performing all of the duties of his employment at his customary place of employment in order for the insurance to be in effect as to such employee is a condition of the policy because no medical examination was required. The purpose of the clause is to provide a test to determine the reasonably good health of an employee and to exclude an employee in such a poor state of health that he cannot fully perform all his duties at his customary place of employment on the date the policy is to become effective as to him. This is a reasonable requirement. Among the duties of this employee were contacting sellers and buyers and supervising and advising other employees. It is stated that the employee was not required to perform any specific duties and he performed all his duties while in *552 the hospital. Accepting this as true on the motion, the actual claim of the plaintiff is that the employee had no customary place of employment or that place was wherever he happened to be at the moment' — in this case, in a hospital. He happened to be there, not because required by his employment or because it was advantageous to his employer, but because of his state of ill-health. To construe the words of the contract to mean that this employee’s customary place of employment was in the hospital, or wherever he happened to be at any given moment, would render the clause in the policy meaningless. Some meaning must be given to each sentence, phrase, and word used, and when this may fairly and properly be done, no part of the language used can be rejected as superfluous or unmeaning. This is an important and familiar rule of construction. The rule is well stated in Merrill v. Travelers’ Ins. Co. (1895), 91 Wis. 329, 335, 64 N. W. 1039:
“It was also insisted that, where reasonably intelligent men would honestly differ as to the meaning of the policy, the doubt should be resolved against the insurer, . . . but this rule cannot apply where the doubt is raised by disregarding a well-established rule of construction, whereby an important word or phrase is rendered insensible of meaning or superfluous. The language of the policy is to be construed according to its natural meaning and its ordinary and usual signification unless such construction would render the words senseless or it is evident from the general scope and intent of the instrument that they were used in some other sense.”
The plaintiff’s last contention is that the employee was covered because he returned to active work and there was no requirement that he return to his customary place of employment. This clause is a part of the sentence providing that “no employee who is not actively at work performing all of the duties of his employment with the employer member at his customary place of employment on the date his insurance is to become effective shall be insured until he returns *553 to active work and the performance of all such duties,” and must be read in that context. The “return to work” refers to his customary place of employment. It is a common expression to say a person “went to work,” or he “was at work.” Such expressions connote place as well as activity. The language contemplates a return and a performance. The status of this employee was no different on March 3d than it was on March 1st. He was still in the hospital. There was no return to active work on March 3d within the meaning of the policy. We do not pass upon situations involving salesmen and others whose duties of employment require them to be absent. But the language does exclude one who, on March 1st, was in a place where it was not customary to perform the duties of employment even though he has made out a case that on said date he did perform all the duties which his employer looked to him to perform.
While insurance contracts drafted by insurance companies are strictly construed against the company, the rule does not mean that violence may be done to the language of the policy. Construing an insurance contract or any other contract does not include or mean making a new contract for the parties. We stated in Lontkowski v. Ignarski (1959), 6 Wis. (2d) 561, 95 N. W. (2d) 230, at page 566:
. . the plain terms of a contract of insurance are not to be rewritten under the guise of strict construction against the company so as to bind the insurer to a risk which it was unwilling to cover and for which it was not paid.” See also Tischendorf v. Lynn Mut. Fire Ins. Co. (1926), 190 Wis. 33, 208 N. W. 917; City Bank of Portage v. Bankers Limited Mut. Casualty Co. (1931), 206 Wis. 1, 238 N. W. 819.
By the Court. — The order denying summary judgment is reversed, with directions to enter judgment dismissing the complaint.
Broadfoot, T., dissents.