UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION,
v. WILLIAM C. REAGAN.

(Filed 13 December, 1961.)

**1. Insurance §§ 1, 49, 52—**

The rule that the insured must have an insurable interest in the subject matter of the policy and that the want of such insurable interest renders the policy void as being against public policy, applies to a fire and hail policy on an automobile to the same extent as to any other type of insurance.

**2. Same—**

An insurable interest in the subject matter of a policy of insurance is some interest such as the law will recognize and protect, and where the insured has no insurable interest the fact that a person who does have an insurable interest lends his consent to the transaction does not impart validity to the policy contract.

**3. Insurance § 53;  Money Received—**

An insurer who has been induced by a mistake of fact to pay a claim under a policy of insurance under the mistaken belief that the terms of the policy required such payment, is entitled to recover such payment from the payee as money had and received, provided the payment has not caused such a change in the position of the payee that it would be unjust to require restitution.

**4. Same—**

The fact that the person to whom payment is made under a mistake
of fact has paid over to another or spent the money so paid does not con-
stitute such a change in condition of the payee as to preclude the recovery
of the payment as money had and received.

**5. Same; Insurance §§ 49, 52— Insurer paying claim under the mis-
taken belief that insured had insurable interest may recover payment
as money had and received.**

Plaintiff's evidence tended to show that defendant procured the issuance
of a certificate of title from the Department of Motor Vehicles and the
execution of a policy of fire and hail insurance on the automobile in ques-
tion by falsely representing that he owned the vehicle, when in fact the
automobile was owned exclusively by defendant's brother and defendant
had no interest therein of any kind, that insurer under this mistake of
fact paid the claim for damage and procured a subrogation receipt from
defendant, that insurer instituted action against the tort-feasor whose
alleged negligence caused the fire, and did not discover the true facts
until it was forced to take a voluntary nonsuit in that action because of
defendant's testimony that he had no interest in the vehicle. *Held:* The
evidence was sufficient to be submitted to the jury in insurer's action
against defendant for money had and received, notwithstanding that de-
fendant had permitted the proceeds of the policy to be used in repair of
the automobile.

APPEAL by plaintiff from *Johnston, J.,* March 1961 Civil Term of
ROCKINGHAM.

This action was instituted in the Reidsville Recorder's Court. A
summary of the allegations of the complaint is as follows:

On 27 December 1958 plaintiff issued to the defendant William C.
Reagan, its policy of insurance insuring a 1958 Convertible Chevrolet
automobile, which was registered with the North Carolina Department
of Motor Vehicles in the name of defendant, William C. Reagan, *inter
alia,* against losses caused by fire or hail. Defendant accepted the
policy as owner of the automobile. Plaintiff acted in reliance upon the
provisions of its policy in accepting the premium, and in delivering its
policy to defendant.

On 23 April 1959 the automobile was damaged by fire, and while
being repaired was damaged by hail. Plaintiff paid defendant, pursuant
to the provisions of its policy, for the fire and hail damage.

The conditions of the policy required the defendant to co-operate
with the plaintiff in recovering or attempting to recover for damage
to the automobile caused or reasonably thought to have been caused
by the negligence of a third party, and to permit plaintiff to institute
suit in defendant's name for such purpose.

Defendant willfully refused plaintiff's request to permit it to insti-
tute suit in his name against one Clarence Eastridge for fire damage

to the automobile caused by the negligence of Clarence Eastridge. As a result, plaintiff instituted action against Clarence Eastridge in the Reidsville Recorder's Court to assert its subrogated rights against him for his negligence in causing fire damage to the automobile. When defendant was subpoenaed as a witness for plaintiff in the suit, he, for the first time told plaintiff he did not own or possess the automobile at the time it was damaged or at any time prior thereto. The automobile was registered in the defendant's name as a courtesy to his brother, Luther T. Reagan, Jr., who was the true owner and possessor of the automobile at all times complained of. Defendant sustained no pecuniary loss or other loss or inconvenience by reason of the fire and hail damage to the automobile.

At the trial of plaintiff's suit against Clarence Eastridge in the Reidsville Recorder's Court defendant William C. Reagan testified under oath that he had no interest in the automobile, had sustained no pecuniary loss or any other loss by reason of its damage by fire, that the automobile was owned by his brother, Luther T. Reagan, Jr., free and clear of any interest whatever by him, including the right of beneficial use. The uncontradicted testimony of defendant and his brother, Luther T. Reagan, Jr., caused the trial judge to intimate that he would dismiss the suit because it appeared from the uncontradicted evidence that William C. Reagan had no interest in the automobile which would entitle him to recover against Eastridge, and that plaintiff could have by subrogation no greater right than William C. Reagan had. Whereupon plaintiff took a voluntary nonsuit.

Defendant obtained the issuance of the insurance policy to him by the representation that he was the owner of the automobile, which was a false representation of a material fact intentionally made to deceive plaintiff and to induce it to issue to him its policy, and which it reasonably relied upon in issuing its policy. The defendant had no insurable interest in the automobile, and plaintiff would not have issued him its policy, if it had known the true facts as to the ownership of the automobile. Consequently, such misrepresentations caused plaintiff to pay money to defendant, and for his benefit, which he was not legally and equitably entitled to receive, and as a result defendant has been unjustly enriched, and plaintiff is entitled to recover damages from defendant in the amount of $1,012.60, less the amount of the insurance premium it received.

Wherefore, plaintiff prays that the policy of insurance be rescinded and restitution granted it, and that it recover from defendant damages in the amount of $1,012.60, less the amount of the insurance premium it received.

Defendant in his answer denied practically all of the allegations

of the complaint, except that he admits the issuance to him by plaintiff of the policy of insurance, that plaintiff made certain payments to him as a result of damage to the automobile, and that plaintiff instituted suit against Clarence Eastridge to assert its subrogated rights against him. And for a further answer defendant alleges in substance: On 27 December 1958, and prior to and subsequent to said date, the title to the automobile was registered in his name with the Motor Vehicles Department, and he was the legal owner of it in contemplation of the policy of insurance plaintiff issued to him. On 27 December 1958 he borrowed money from the Bank of Reidsville, and pledged as security for the loan the automobile, which loan he paid. The money paid him by plaintiff for damage to the automobile was used exclusively for the repair of the automobile.

Plaintiff filed a reply in which he alleged in substance: As a result of defendant's fraud the Commissioner of Motor Vehicles was misled and caused to register the automobile in defendant's name and to certify mistakenly to the public that defendant was the lawful owner of the automobile. After the automobile was damaged by fire, defendant filed a claim for loss under his policy, accepted from plaintiff payment for the fire loss, and assigned his interest in the claim to plaintiff in accordance with the subrogation provisions of the policy, so that plaintiff could recover from the wrongdoer. Plaintiff instituted suit against Clarence Eastridge for negligence in causing fire damage to the automobile, and defendant testifying in said suit said he had no ownership of, control over, or interest in the automobile, thereby forcing plaintiff to withdraw its suit, pay the costs, and to be deprived of its right of subrogation. No insurable interest in the automobile was acquired as a consequence of his obtaining a title certificate for it from the Motor Vehicles Department. By virtue of defendant's denial in its suit against Eastridge of his having any insurable interest in the automobile and the resulting injury to plaintiff, defendant is now estopped to claim an insurable interest in the automobile which would entitle him to compensation under the policy for fire loss, and the policy should be declared void as against public policy.

The case was tried in the Reidsville Recorder's Court. The following issues were submitted to the jury and answered as follows:

"1. Was the defendant unjustly enriched at the expense of the plaintiff, as alleged in the Complaint?
ANSWER: Yes.
"2. What amount, if any, is the plaintiff entitled to recover of the defendant?
ANSWER: $926.68."

Judgment was entered upon the verdict, and defendant appealed to the superior court, where the case was heard *de novo*.

This is a summary of plaintiff's evidence in the superior court:

On 12 November 1958 defendant, William C. Reagan, filed a sworn, written application in the usual form with the North Carolina Motor Vehicles Department for a certificate of title for the Chevrolet automobile here, in which he stated he was the owner of the Chevrolet automobile, and had purchased it secondhand on 16 October 1958 from his brother, Luther T. Reagan, Jr., Maxwell, A. F. B., Alabama. Pursuant to his application, the Commissioner of Motor Vehicles issued to defendant a certificate of title for the Chevrolet. Defendant applied for, and plaintiff on 27 December 1958 issued to him, a policy of insurance insuring the Chevrolet, *inter alia*, against losses caused by fire and hail. Item 4 in the declarations of the policy shows that any loss under Part III, which covers physical damage to the Chevrolet, such as fire and hail, is payable as interest may appear to the named insured, William C. Reagan, and the time payment department, Bank of Reidsville: the policy does not reflect the interests of any other person.

On 23 April 1959 the Chevrolet was in Eastridge's Garage when and where it was damaged by fire. An investigation by an adjuster of plaintiff revealed that when it caught fire there was definite evidence of negligence on the part of the garage. After the fire the Chevrolet was carried to Chambers and Poindexter Body Shop for repairs, and while there five days later it was damaged by hail. Chambers and Poindexter Body Shop repaired the fire and hail damage. William C. Reagan made claim under the policy with plaintiff for payment of the fire and hail damage. An adjuster of plaintiff discussed with defendant his claim, and defendant did not say, or do, anything to indicate that he was not the owner of the Chevrolet. Plaintiff issued its draft on 17 June 1959 payable to William C. Reagan and Chambers and Poindexter Body Shop for $806.24 covering the fire damage, and another draft on the same day payable to the same payees for $171.44 covering the hail damage. The payees therein named endorsed both drafts, and both drafts were paid upon presentation.

On 2 July 1959 William C. Reagan delivered to plaintiff his signed subrogation receipt, in which he states in reference to his claim for damage to the Chevrolet under his policy of insurance with plaintiff he had received from plaintiff the sum of $806.24 in full settlement for loss occurring on 23 April 1959, and in which he further states as follows: "In consideration of and to the extent of the above payment, the undersigned subrogates, assigns and transfers to the above company, any and all claims or causes of action which the undersigned

may have against any person, firm, or corporation liable for the loss mentioned above, and authorizes the company to sue, compromise, or settle in the undersigned's name, or otherwise, all such claims, and to execute and sign releases and acquittances and endorse checks or drafts given in settlement of such claims in the name of the under-signed." At the same time and as part of the subrogation receipt William C. Reagan signed a certificate of satisfaction that damage to the Chevrolet insured under the policy had been satisfactorily repaired, and that the payment of the cost of the repairs by plaintiff constitutes a release in full for all claims for damage to the insured Chevrolet under the policy.

Plaintiff instituted suit under its subrogation receipt from plaintiff against Clarence Eastridge in Reidsville Recorder's Court to recover damages for injury by fire to the insured Chevrolet caused by the negligence of Eastridge. Eastridge filed an answer in the suit about 27 October 1959. On 5 January 1960, which was 21 days before the trial of the case, William C. Reagan told an adjuster of plaintiff he did not own the Chevrolet and had no interest in it. That was the first time plaintiff had any knowledge or notice William C. Reagan did not own the Chevrolet.

The case of plaintiff against Eastridge was tried in Reidsville Recorder's Court in January 1960. The judge of that court testified in substance: In the trial William C. Reagan testified under oath that he had no interest in the insured Chevrolet, and had never had any interest in it. He may have paid for the title certificate, but that if he did, his brother, Luther T. Reagan, Jr., paid him back. He paid for the insurance but his brother paid him back. His brother Luther owned the Chevrolet, and he had never loaned Luther any money on the Chevrolet, and had never exercised any control over it. He had never driven the Chevrolet, though he had ridden in it. He gave no one any instructions to repair it. He sustained no loss by virtue of the fire or otherwise.

The case on appeal was agreed upon by counsel. The statement of case on appeal says in part: "This civil action was instituted to recover money paid to the defendant under the terms of a certain automobile, casualty insurance policy. . . . The defendant claimed and received insurance payments as a consequence of fire and hail damage sustained to the automobile. Upon trial of the plaintiff's subrogated right to recover against a third party tort-feasor for the fire damage, this defendant, testifying as a sworn witness for the plaintiff, denied having any interest in the subject automobile except such as may have arisen by virtue of the registration of the vehicle with the Department of Motor Vehicles. Upon intimation from the court that the plain-

tiff's claim of subrogation would be nonsuited and dismissed for failure to show an insurable interest to which plaintiff might be subrogated, plaintiff was allowed to submit to a voluntary nonsuit."

At the close of plaintiff's evidence the court, upon defendant's motion, allowed his motion for judgment of involuntary nonsuit.

From a judgment of involuntary nonsuit, plaintiff appeals.

*Gwyn & Gwyn By Julius J. Gwyn for plaintiff, appellant.*

*Brown, Scurry, McMichael & Griffin By Claude S. Scurry and Jule McMichael for defendant, appellee.*

PARKER, J.   It is a fixed rule of insurance law that an insurable interest on the part of the person taking out the policy is essential to the validity and enforceability of the insurance contract, whatever the subject matter of the policy, and that if no insurable interest exists, the contract is void. *Trinity College v. Ins. Co.,* 113 N.C. 244, 18 S.E. 175; *Wharton v. Ins. Co.,* 206 N.C. 254; 173 S.E. 338; 29 Am. Jur., Insurance, § 433, where cases are cited to this effect from many jurisdictions. 44 C.J.S., Insurance, § 175.

The fact that another person who has an insurable interest lends his consent to the transaction does not impart validity to a policy of insurance. 44 C.J.S., Insurance, p. 869. See *Trinity College v. Ins. Co., supra.*

It is a prerequisite to the validity of a policy insuring against loss or injury to an automobile by fire, theft, collision, or other causes, no less than in the case of any other type of insurance, that the person to whom it is issued have some interest in the automobile, inasmuch as some interest is essential to the validity of a policy of insurance, whatever its subject matter. *Mowles v. Ins. Co.,* 226 Mass. 426, 115 N.E. 666; *Hirsch v. Ins. Co.,* 218 Mo. App. 673, 267 S.W. 51; *Hessen v. Ins. Co.,* 195 Iowa 141, 190 N.W. 150, 30 A.L.R. 657; 6 Blashfield, Cyclopedia of Automobile Law and Practice, § 3501; 5A Am. Jur., Automobile Insurance, § 10.

Now there is little discussion in the cases as to the necessity of the existence of an insurable interest in the insured, but the question as to the nature and extent of the interest required in order to qualify as an insurable interest is still a matter of lively debate. This debate is conducted largely from the point of view of determining whether or not the interest of particular persons such as mortgagors, receivers, spouses, or landlords constitutes an insurable interest. Anno. 9 A.L.R. 2d p. 183.

It is said in *Warnock v. Davis,* 104 U.S. 775, 26 L. Ed. 924, "It is not easy to define with precision what will in all cases constitute an insur-

able interest, so as to take the contract out of the class of wager policies."

"As a general rule, anyone has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction." 5A Am. Jur., Automobile Insurance, § 11.

This is said in 44 C.J.S., Insurance, p. 870: "In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against. Great liberality is indulged in determining whether a person has anything at hazard in the subject matter of the insurance, and any interest which would be recognized by a court of law or equity is an insurable interest. Thus, the interest of insured may be personal or as a representative of the rights of others; and while neither legal nor equitable title is necessary, a person must have such a right or interest as the law will recognize and protect."

*Fray v. National Fire Ins. Co.*, 341 Ill. 431, 173 N.E. 479, relied upon by defendant is clearly not in point. In that case a trustee acquired title to the insured property under a quit claim deed conveying the property for the benefit of creditors under a trust agreement. Transfers were absolute on their face, and there was no defeasance clause in either deed or bill of sale or instrument of trust which gave trustee absolute power, directed him to sell property and to apply same for benefit of grantor's creditors. In no event was grantor entitled to recover property. The trustee was held to have an insurable interest in the property.

Considering plaintiff's evidence in the light most favorable to it, as we are required to do on a motion for judgment of involuntary nonsuit, *Bridges v. Graham*, 246 N.C. 371, 98 S.E. 2d 492, it tends to show that defendant was not the owner of the Chevrolet automobile, and obtained a certificate of title to it from the Commissioner of Motor Vehicles by false representations to the Motor Vehicles Department in his sworn, written application to it for a certificate of title that he was, when in fact his brother owned the Chevrolet. Certainly, this evidence, considered in the light most favorable to plaintiff, gave defendant no insurable interest in the Chevrolet automobile, which any court of law or equity would recognize as an insurable interest and that the policy of insurance issued to defendant by the plaintiff is void. This is said in *Hirsch v. Ins. Co., supra:* "This case is no different in principle than if a stranger had procured a certificate of title to this automobile when the automobile in fact belonged to plaintiff. Under such

circumstances, of course, no reasonable person would say that the real ownership was in the stranger, although the issuance of such a certificate is no doubt some evidence of title."

It is a firmly established general rule that an insurer who has made a payment under an erroneous belief induced by a mistake of fact that the terms of the insurance contract required such payment is entitled to restitution from the payee, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. The rule is bottomed on the equitable doctrine that an action will lie for the recovery of money received by one to whom it does not in good conscience belong, the law presuming a promise to pay. *Pilot Life Ins. Co. v. Cudd*, 208 S.C. 6, 36 S.E. 2d 860, 167 A.L.R. 463; *St. Paul F. & M. Ins. Co. v. Pure Oil Co.*, 63 F. 2d 771; *Roney v. Commercial Union Fire Ins. Co.*, 225 Ala. 367, 143 So. 571; *Franklin Life Ins. Co. v. Ward*, 237 Ala. 474, 187 So. 462; *Ponder v. Jefferson Standard Life Ins. Co.*, 201 Ark. 179, 143 S.W. 2d 1115; *Couper v. Metropolitan Ins. Co.*, 250 Mich 540, 230 N.W. 929; *Riegel v. American Iife Ins. Co.*, 153 Pa. 134, 25 A. 1070, 19 L.R.A. 166; *Prudential Ins. Co. v. Somers*, Court of Common Pleas of Conn., 135 A. 2d 365; *Great American Ins. Co. v. Yellen*, 58 N.J. Super. 240, 156 A. 2d 36; *North River Ins. Co. v. Aetna Finance Co.*, 186 Kan. 758, 352 P. 2d 1060; *Kentucky Farm Bureau Mutual Ins. Co. v. Cobb*, Court of Appeals of Kentucky, 290 S.W. 2d 606; *Scottish Metropolitan Assurance Co., Ltd. v. P. Samuel and Co., Ltd.*, (1923) 1K.B. 348; Annotation 167 A.L.R. 472-476

It is a thoroughly well established general rule that money paid to another under the influence of a mistake of fact, that is, on the mistaken belief of the existence of a specific fact material to the transaction, which would entitle the other to the money, which would not have been paid if it had been known to the payor that the fact was otherwise, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. 40 Am. Jur., Payments, § 187 and § 192; 70 C.J.S., Payment, § 157. Such is the law in this jurisdiction. *Adams v. Reeves*, 68 N.C. 134, 12 Am. Rep. 627; *Simms v. Vick*, 151 N.C. 78, 65 S.E. 621, 24 L.R.A. (N.S.) 517, 18 Ann. Cas. 669; *Sparrow v. John Morrell & Co.*, 215 N.C. 452, 2 S.E. 2d 365; *National Bank of Sanford v. Marshburn*, 229 N.C. 104, 47 S.E. 2d 793; *Tarlton v. Keith*, 250 N.C. 298, 108 S.E. 2d 621.

"An action to recover money paid under a mistake of fact is an action in assumpsit and is permitted on the theory that by such payment the recipient has been unjustly enriched at the expense of the party making the payment and is liable for money had and received."

*Morgan v. Spruill,* 214 N.C. 255, 199 S.E. 17. In accord, see 4 Am. Jur., Assumpsit, § 24.

In *North River Insurance Company v. Aetna Finance Co., supra,* the Court said: "As early as the times of Oliver Cromwell, courts of law in England held that the action of general or indebitatus assumpsit would well lie on the common count of money had and received, where the plaintiff showed that he had under mistake of fact paid money to defendant under a supposed duty. Attention is directed to the decision in the year 1657, in the case of *Bonnel v. Fouke,* 2 Siderfin 4; translated from the Norman French and reprinted in Scott & Simpson, Civil Procedure 104."

"While the ownership of, and title to, property is ordinarily a mixed question of law and fact, a payment made under mistake with respect thereto is usually treated as made under a mistake of fact rather than a mistake of law." 70 C.J.S., Payment, p. 370. To the same effect: *Kentucky Farm Bureau Mutual Ins. Co. v. Cobb, supra; Roney v. Commercial Union Fire Ins. Co., supra.*

"As a general rule, it is no defense to an action for the recovery of a payment made under mistake of fact that the money or property has been paid over to another or spent by the payee." 70 C.J.S., Payment, p. 372. To the same effect: *Moors v. Bird,* 190 Mass. 400, 77 N.E. 643; *Picotte v. Mills,* 200 Mo. App. 127, 203 S.W. 825; *Scottish Metropolitan Assurance Co., Ltd. v. P. Samuel and Co., Ltd., supra.*

In *St. Paul F. & M. Ins. Co. v. Pure Oil Co., supra,* which was an action by marine insurers for money paid through mistake in settlement of cargo loss, it was held that deduction of premiums was essential, but tender before suit unnecessary. *L. Hand, C.J.,* speaking for the Court said: "The premium must of course be deducted, but as this is an action for money paid, no tender before suit was necessary."

Plaintiff's evidence, considered in the light most favorable to it, and giving it the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom according to the rule in passing on a motion for judgment of involuntary nonsuit, tends to show:

Defendant obtained from the Commissioner of Motor Vehicles a certificate of title on the Chevrolet here by a false representation in his sworn, written application for a certificate of title on the Chevrolet that he had bought the Chevrolet from his brother, and that he was the owner of the Chevrolet, whereas in truth and in fact he had not bought the Chevrolet from his brother, and his brother was the owner of the Chevrolet. That by the same false representation and fraud he obtained from plaintiff the policy of insurance here. That when the Chevrolet was damaged by fire and hail he made a claim with plain-

tiff for the payment of such damage to the Chevrolet under the policy of insurance. That plaintiff made the two payments under the policy of insurance for the fire and hail damage to the Chevrolet above set forth, under an erroneous belief induced by a mistake of fact caused by the false representations of defendant that he was the owner of the Chevrolet, which was material to the transaction, and that the terms of the policy of insurance required such payments. That plaintiff would not have made such payments, if it had known the fact was otherwise. That plaintiff did not know that defendant was not the owner of the Chevrolet, until after it had brought suit to recover fire damage to the Chevrolet caused by the alleged negligence of Clarence Eastridge by virtue of the subrogation receipt given by defendant to it, when it was told of such fact by defendant.

Plaintiff's adjuster testified in substance: We put the garage on the drafts as a payee to protect it: we know from experience an owner often can get a garage to endorse a draft, and retain the full amount. Defendant's subrogation receipt given to plaintiff states defendant has received from plaintiff the sum of $806.24 in full settlement for loss occurring on 23 April 1959. This was the fire damage. In the statement of the agreed case on appeal it is stated: "The defendant claimed and received insurance payments as a consequence of fire and hail damage sustained to the automobile."

Defendant voluntarily endorsed the drafts and received the proceeds, or voluntarily permitted the proceeds of the drafts to be received by Chambers and Poindexter Body Shop in payment of repairs to his brother's Chevrolet. Whether he received the proceeds of the drafts and expended them, or permitted the proceeds to be paid to another, is no defense to the present action for the recovery of payments made by plaintiff for fire and hail damage to the Chevrolet under a mistake of fact induced by his false representations and fraud, provided the jury finds such facts exist. Money paid under a mistake of fact is not the money of the payee.

Plaintiff's evidence, considered in the light most favorable to it, does not tend to show that the payments for fire and hail damage by plaintiff to defendant have caused such a change in the position of the defendant payee that it would be inequitable or unjust to require him to make full restitution to plaintiff less the amount of premium paid for the insurance, but it does tend to show that such payments belong in equity and good conscience to plaintiff who paid them, and that plaintiff is entitled to full restitution, minus the amount of premium received by it for the policy of insurance.

The judgment of involuntary nonsuit was improperly entered.

Reversed.