Jeanne KUEHN, Plaintiff-Appellant,

v.

SAFECO INSURANCE COMPANY OF AMERICA,
a foreign corporation, Defendant-Respondent.†

Court of Appeals

*No. 86–0696. Submitted on briefs March 10, 1987.—Decided
July 2, 1987.*

(Also reported in 412 N.W.2d 126.)

† Petition to review denied.

621

For the plaintiff-appellant the cause was submitted on the briefs of *Bunk, Doherty & Griffin, S.C.,* with *Joseph G. Doherty* and *Patrick R. Griffin* of counsel, of West Bend.

For the defendant-respondent the cause was submitted on the briefs of *Arnold, Murray, O'Neill & Schimmel,* with *Lawrence P. Zieger* of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Jeanne Kuehn (Kuehn) appeals from an order dismissing her claim against Safeco Insurance Company for underinsured motorist coverage under a policy issued to her deceased husband, Dr. Richard Kuehn.

Kuehn raises two issues on appeal: (1) Safeco cannot benefit from the provisions of an endorsement for underinsurance coverage not included with a policy where there is an ambiguity in the contract; and (2) sec. 631.43(1), Stats., prohibits the use of a reducing clause in underinsured motorist coverage. Because the findings of the trial court are not clearly erroneous, and because sec. 631.43(1) only prohibits the use of reducing clauses in indemnity coverages, we affirm.

It is undisputed that Dr. Richard Kuehn and his wife, Jeanne, were insured under an automobile insurance policy issued by Safeco. Before the policy was issued, Dr. Kuehn contacted Safeco's Milwaukee

office and requested a quote on automobile insurance. As a result, an agent of Safeco, Frank Foti, called Dr. Kuehn in late November or early December 1982, for some preliminary information. Foti called Dr. Kuehn a second time, and briefly explained to him underinsured motorist coverage. A third conversation occurred between Foti and Dr. Kuehn in a hurried meeting in a parking lot. On that occasion, Foti and Dr. Kuehn briefly discussed the fact that the policy would provide underinsured motorist coverage. Foti obtained Dr. Kuehn's signature on the insurance application which had been prepared and gave him a blue brochure or handbook describing Safeco's Auto Insurance Protection Plan. Foti then bound coverage for Dr. Kuehn and later the same day sent him a bill for the premium. Dr. Kuehn paid the bill and Safeco subsequently issued a policy of automobile insurance to him.

The declarations sheet of Dr. Kuehn's Safeco policy provided for underinsured motorist coverage of $100,000 per person and $300,000 per accident. There was, however, no endorsement or explanation of underinsurance coverage attached to the policy.

The policy was in effect on August 13, 1983, when Dr. Kuehn was killed in an automobile accident involving a car driven by Michael Frederick and insured by State Farm Mutual Automobile Insurance Company. The limits of liability of the State Farm policy were $100,000.

State Farm tendered the $100,000 liability limits on its policy to settle Kuehn's claim against Frederick. Kuehn's attorney sent a copy of State Farm's tender to Safeco and at the same time made a claim for the $100,000 underinsured motorist limits. When Safeco formally denied Kuehn's claim, she filed suit. After a

bench trial, the trial court dismissed her action, and she now appeals.

██

The issue presented to the trial court was to interpret a provision of the insurance contract denominated "underinsurance." Because of the absence of an endorsement defining "underinsurance," the policy is silent as to this feature. Thus, the trial court heard parol evidence to determine the parties' intent. If a writing is only a partial integration of the parties' agreement, it is proper to consider parol evidence which establishes the full agreement as long as the parol evidence does not conflict with the part that has been integrated in writing. *Spring Valley Meats, Inc.: Dairyland Equipment Leasing, Inc. v. Bohen,* 94 Wis. 2d 600, 607–08, 288 N.W.2d 852, 855 (1980).

After hearing the testimony of agent Foti concerning his three conversations with Dr. Kuehn, the trial court in an oral decision determined that as a matter of fact, Foti never explained to Dr. Kuehn the underinsurance coverage in terms of excess coverage. To express this finding another way, the trial court did not find that Foti explained to Dr. Kuehn that if someone hit him and his damages were greater than the policy limits of the tortfeasor, he could recover up to the policy limits of his underinsurance coverage. The trial court made this determination even though it found that Foti believed that this was the way the underinsurance coverage was to apply.

After determining that an endorsement for underinsurance was not on the policy received by Dr. Kuehn, the court considered the oral agreement between Foti and Dr. Kuehn. The court found that the oral contract entered into by the parties was for underinsurance which "would pay up to the limits of

the policy as a setoff against the limits of the other party's policy." In effect, the court found that the $100,000 paid by State Farm reduced Safeco's payment under its policy to zero.

The court found that Dr. Kuehn did not have any reasonable expectation after his meeting with Foti that he was receiving excess insurance. The court based this determination on the fact that Foti never explained the insurance in terms of excess coverage, that underinsurance coverage is probably unknown to ninety percent of those who have automobile insurance policies, and that a blue handbook given him by Foti which included a description of underinsurance coverage did not suggest excess coverage.

In discussing the handbook, the court found that even if Dr. Kuehn read it, which there was reason to doubt, it only alerted him to the possibility of obtaining underinsurance coverage. The court further found that the wording of the handbook that "Safeco pays the difference between the other motorist's bodily injury limits and the costs of your injuries up to the coverage limits you purchase" meant that "you would get it only up to your limit as opposed to what the other person had." The court also found that the handbook contained a disclaimer that a particular state might not have this particular coverage.[1]

The trial court ultimately found that the intent of the parties was for underinsurance which would pay the limits of the policy, but only as reduced by the

---

[1]The handbook states that "[c]overages will vary according to the rules and regulations of individual states and provinces, particularly those states in which no fault insurance has been enacted, and according to the terms, conditions and exclusions specified in the policy."

limits of the tortfeasor's liability policy. The court also concluded that sec. 631.43, Stats., was not applicable to reducing clauses in underinsured motorist coverage.

Kuehn contends that the underinsurance coverage is ambiguous, which therefore presents a question of law. She argues whenever an ambiguity exists in a contract of insurance, it should be strictly construed in favor of the insured, and Safeco cannot deny coverage based on an endorsement not included with the policy. We note, however, that when doubt as to the meaning of a contract has been removed by the construction placed upon the contract by the parties, as evidenced by acts or conduct, indicating a mutual intent, the rule that a policy must be construed against the insurer is not to be applied. *State ex rel. Northwestern Mut. Life Ins. Co. v. Bland,* 189 S.W.2d 542, 549 (Mo. 1945) (policy was silent concerning matters covered by an assignment agreement).

We find no authority that mere silence is the equivalent of ambiguity. The fundamental question was the intent of the parties, which had to be determined by extrinsic evidence. Insurance contracts should be construed to effect the parties' true intent and the extent of policy coverage. *Gonzalez v. City of Franklin,* 137 Wis. 2d 109, 122, 403 N.W.2d 747, 752 (1987). Therefore, the question for the trial court was one of fact. In *Thurston v. Burnett & Beaver Dam Farmers' Mutual Fire Insurance Co.,* 98 Wis. 476, 478–79, 74 N.W. 131, 132 (1898), in deciding that no factual issue had been presented in construing the terms of a fire insurance policy, the court explained that

where there is no uncertainty as to the meaning of the words used in the contract, and where such uncertainty exists but *there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made,* the proper interpretation of the words and construction of the contract are solely for the court. [Emphasis added.]

*See also Bauman v. Midland Union Ins. Co.,* 261 Wis. 449, 451, 53 N.W.2d 529, 530 (1952) (general rule is that construction of words and clauses in insurance policy, where construction does not depend on extrinsic facts, is question of law for court to decide); *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979) (where ambiguity exists which requires resort to extrinsic evidence, question is one of fact).

■

Faced with an insurance contract that was silent as to the parties' intent regarding underinsurance, the trial court, through the fact-finding process from the evidence before it, determined the intent of the parties. The trial court ultimately determined that the parties intended that the underinsurance coverage was not of the excess coverage type. Since this determination was not clearly erroneous, *see* sec. 805.17(2), Stats., we affirm.

Kuehn also contends that sec. 631.43(1), Stats., prohibits the use of a reducing clause in underinsured motorist coverage.[2] Because the statute only prohibits

---

[2]Sec. 631.43 states:

**Other insurance provisions.** (1) **General.** When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate

restrictions on the stacking of indemnity coverages, it is inapplicable in this case.

We first note that *Grabski v. Finn*, 630 F. Supp. 1037, 1047 (E.D. Wis. 1986), held that an underinsurance policy provision which provided for coverage only when its policy limits for underinsurance were greater than the liability limits for the underinsured vehicle did not contravene the statute. The court stated that

> [b]y its very nature an underinsurance clause involves the existence of other insurance; but ... construing an underinsurance provision to provide additional insurance whenever the injured insured has not fully recovered his damages would be to render the term 'underinsured' meaningless. The status of being underinsured is measured against another insurance policy, not against the injured party's damages.

*Id.* at 1047–48.

Statutory interpretation involves a question of law and we need not defer to the trial court's decision on this issue. *DILHR v. Coatings, Inc.*, 126 Wis. 2d 338, 343, 376 N.W.2d 834, 837 (1985). We can resolve this issue based on the fact that our case involves indemni-

protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

ty and liability insurance coverages. Our court has held that sec. 631.43(1), Stats., prohibits restrictions only on the stacking of indemnity coverages.[3] *Mullen v. Coolong,* 132 Wis. 2d 440, 453, 393 N.W.2d 110, 115 (Ct. App. 1986) *(overruled in part, Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 600–01, 405 N.W.2d 327, 334–35 [1987]). The supreme court overruled *Mullen's* holding that sec. 632.32(4)(a) 1, Stats., does not bar a reducing clause and held that an insurance policy may not reduce the coverage required by the uninsured motorist statute. *Nicholson,* 137 Wis. 2d at 604–05, 405 N.W.2d at 336.

■

*Nicholson* specifically did not address whether sec. 631.43(1), Stats., applied to situations involving liability as well as indemnity provisions.[4] *Nicholson,* 137 Wis. 2d at 603, 405 N.W.2d at 336. We therefore conclude that *Mullen's* holding that the statute prohibits restrictions only on the stacking of indemnity

---

[3]Indemnity contracts require the insurer to make whole the insured after an actual loss has been sustained; liability contracts require the insurer to protect the insured from making payment on a claim for which he is liable. *Landvatter v. Globe Sec. Ins. Co.,* 100 Wis. 2d 21, 26, 300 N.W.2d 875, 878 (Ct. App. 1980).

[4]The court, in *dictum,* did cite *Landvatter,* for its application of secs. 631.43(1) and 632.32(3), Stats., to invalidate an insurance clause which provided that payment of uninsured motorist benefits would be reduced by amounts paid under the uninsured motorist provisions of other policies. The court also stated that the legislative objective of sec. 631.43 is to "give the injured party the aggregate protection of the insurance provisions up to the actual loss suffered by the insured." *Nicholson,* 137 Wis. 2d at 603–04 n. 6, 405 N.W.2d at 336 n. 6. *Landvatter* did not involve liability coverages. We do not read the above as affecting the interpretation of sec. 631.43(1) as it applies to liability and indemnity coverages.

coverages is still valid law. Since the instant case involves liability and indemnity coverages, *Mullen* is conclusive on the application of sec. 631.43(1).

*By the Court.*—Order affirmed.