Eileen C. KAUN, Plaintiff-Appellant-Petitioner,

BADGER MUTUAL INSURANCE COMPANY, a
domestic corporation, Intervenor-Plaintiff-
Respondent,

v.

INDUSTRIAL FIRE & CASUALTY INSURANCE
COMPANY and Daniel J. Smith, Defendants.

Supreme Court

*No. 85–1286. Argued October 4, 1988.—Decided March 9, 1989.*

(Also reported in 436 N.W.2d 321.)

663

For the plaintiff-appellant-petitioner there were briefs and oral argument by *Morton Gollin,* Palm Springs, California.

For the intervenor-plaintiff-respondent there was a brief by *Kurt H. Frauen, James M. Fredericks* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Milwaukee, and oral argument by *Kurt H. Frauen.*

Amicus curiae briefs were filed by *Boyd M. McGranaghan* and *McGranaghan & Stawski,* Milwaukee, for Wisconsin Academy of Trial Lawyers; and *Eric Englund,* Madison, for Wisconsin Insurance Alliance.

LOUIS J. CECI, J. This is a review of a decision of the court of appeals, *Kaun v. Industrial Fire & Casualty Ins. Co.,* 142 Wis. 2d 650, 419 N.W.2d 272 (Ct. App. 1987), which affirmed a judgment of the circuit court for Waukesha county, Willis J. Zick, circuit judge, granting summary judgment to Badger Mutual Insurance Company (respondent). Two issues are presented for review. The first issue is whether an insurance company's payment to its insured under uninsured

motorist (UM) coverage becomes a payment under underinsured motorist (UIM) coverage when, at some later date, the tortfeasor's insurance company admits liability on behalf of the tortfeasor and tenders its liability limit to the court. The second issue is whether the reducing clause in the UIM provision of the insurance policy at issue is valid and enforceable under Wisconsin law so as to reduce UIM benefits recoverable under the policy's limit by the amount received by the insured from the underinsured driver's liability policy. We conclude that an insurance company's payment to its insured under UM coverage becomes a payment under UIM coverage when, at some later date, the tortfeasor's insurance company admits liability on behalf of the tortfeasor and tenders its liability limit to the court. In addition, we conclude that the reducing clause in the UIM provision of the insurance policy at issue in this case does not reduce the UIM benefits recoverable under the policy's limit by the amount received by the insured from the underinsured driver's liability policy. Rather, the "amounts payable" from the UIM provision at issue in this case are measured against the insured's total damages, and the reducing clause reduces UIM benefits by subtracting from the total damages sustained by the insured the amount received by the insured from the underinsured driver's liability policy.

The facts in this case are as follows. On April 25, 1983, an action was commenced in the circuit court by Eileen Kaun (petitioner) against Daniel Smith and his insurer, Industrial Fire & Casualty Insurance Company (Industrial), for injuries sustained by the petitioner because of the alleged negligent driving of Daniel Smith. Industrial's amended answer to the petitioner's complaint denied liability coverage, and, upon such

665

denial of coverage, the respondent, the petitioner's insurer, paid the petitioner $49,500 under the UM coverage of its policy with the petitioner.[1]

By order dated March 27, 1984, the respondent was allowed to intervene in the action. On June 4, 1984, nearly one year after its denial of coverage, Industrial admitted liability on behalf of Smith. On August 2, 1984, Industrial tendered its $15,000 liability limit to the court for determination as to whether the petitioner or the respondent was entitled to the funds. Both the petitioner and the respondent moved for summary judgment, each claiming entitlement to the $15,000. For purposes of its summary judgment motion and through this appeal, the respondent concedes that the petitioner's injuries are greater than $65,000. The circuit court granted summary judgment in favor of the respondent and awarded it the $15,000. The judgment was affirmed by the court of appeals.

The court of appeals decided that the issue presented in this case was one of underinsurance rather than uninsurance. The court of appeals found that once Industrial admitted coverage and tendered its $15,000 liability limit, Industrial had conceded that the tortfeasor was insured by Industrial, and, therefore, Smith was not uninsured. *Kaun,* 142 Wis. 2d at 654–55. In addition, the court of appeals held, citing *Kuehn v. Safeco Ins. Co. of America,* 140 Wis. 2d 620, 412 N.W.2d 126 (Ct. App. 1987), that the reducing clause in the respondent's policy was valid and enabled the respondent to reduce its liability to the petitioner by the $15,000 paid by Industrial. *Kaun,* 142 Wis. 2d at 656.

---

[1]The $49,500 was paid as a compromise agreement rather than the limit of $50,000. This compromise also involved an issue of the medical payments coverage. Therefore, $49,500 was considered full payment of the coverage under the uninsured motorist provision.

Therefore, the court of appeals affirmed the judgment of the circuit court awarding the $15,000 tendered by Industrial to the respondent.

■

It is well settled that the construction of an insurance policy is a question of law for the court and, therefore, is reviewed *de novo. Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987).

The pertinent language for UIM coverage in the policy issued by the respondent provides as follows:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. . . .
>
> We will pay under this coverage only after the limits of liability under any applicable bodily injury liability policies or bonds have been exhausted by payment of judgments or settlements. As used in this endorsement:
>
> . . .
>
> "Underinsured motor vehicle" means a land motor vehicle insured by a liability policy or bond at the time of the accident which provides bodily injury liability limits less than the limit of liability for this coverage. It does not include a vehicle:
>
> . . .
>
>> (5) which is insured by liability policy or bond at the time of the accident, but the insuring company or bonding denies coverage or is or becomes insolvent.
>
> . . .

LIMITS OF LIABILITY

. . .

Amounts payable will be reduced by payments:

> (1) made by the owner or operator of the underinsured motor vehicle or organization which may be legally liable . . . .

We agree with the court of appeals that the issue presented in this case is one of underinsurance rather than uninsurance. UM coverage is effective where the tortfeasor has no liability insurance, and UIM coverage is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused. *Schwochert v. American Family Mutual Ins. Co.,* 139 Wis. 2d 335, 346, 407 N.W.2d 525 (1987). A fundamental characteristic of underinsurance is that it only becomes effective when the tortfeasor's insurance partially compensates but is not adequate to provide full indemnification to the insured. The respondent agrees that under the terms of its policy, even if a tortfeasor is insured, UM coverage is operative if the tortfeasor's insurer denies coverage. Therefore, had Industrial maintained its denial of coverage of the tortfeasor, this would have been an uninsurance case. However, because Industrial admitted coverage and tendered its $15,000 liability limit, this is an underinsurance case.

We turn now to the issue of the validity and effect of the reducing clause involved in this case. Insurance contracts are controlled by the same rules of construction as are applied to other contracts. *Vidmar v. American Family Mutual Ins. Co.,* 104 Wis. 2d 360, 365, 312 N.W.2d 129 (1981), *overruled in part on other*

668

*grounds, Welch v. State Farm Mutual Automobile Ins. Co.,* 122 Wis. 2d 172, 179, 361 N.W.2d 680 (1985). *See also Ehlers v. Colonial Penn Ins. Co.,* 81 Wis. 2d 64, 74, 259 N.W.2d 718 (1977). The goal of construction is to ascertain the true intentions of the parties to the insurance contract. *Vidmar,* 104 Wis. 2d at 365. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. *Id.,* quoting *Garriguenc v. Love,* 67 Wis. 2d 130, 134–35, 226 N.W.2d 414 (1975). Ambiguities in coverage are to be construed in favor of coverage, while exclusions are narrowly construed against the insurer. *Vidmar,* 104 Wis. 2d at 365, citing *Davison v. Wilson,* 71 Wis. 2d 630, 635–36, 239 N.W.2d 38 (1976).

We find that the words "amounts payable" found in the reducing clause at issue are ambiguous. Consequently, we will construe the words in accordance with what a reasonable person in the position of an insured would have understood the words to mean. In this case, $50,000 of UIM coverage was provided by the respondent in the policy issued. It is conceded for the purposes of this appeal that the petitioner's damages exceed $65,000. The respondent maintains it is liable to the petitioner for only $35,000. However, if the respondent is allowed to offset its $50,000 liability to the petitioner by the $15,000 paid by Industrial, the respondent will not be providing the $50,000 of UIM benefits it indicated it would pay on the declarations page of its policy.

Accepting the respondent's position, *i.e.,* that the "amounts payable" under the UIM policy are the UIM limitation indicated on the declarations page of the

policy reduced by payments made by the *tortfeasor*, the respondent will *never* pay the policy limits of its UIM policies. For example, a policyholder purchases and pays a premium for UIM coverage with limits of $25,000. The insurance company would collect a premium for this coverage, but under no circumstances will the insured ever collect anything under that coverage. UIM coverage is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused. *Schwochert,* 139 Wis. 2d at 346. In Wisconsin, liability coverage currently cannot be issued for less than $25,000. Section 344.33, Stats. Therefore, because underinsurance is only effective where a tortfeasor has liability coverage which must be for at least $25,000 in Wisconsin and since, under the position the respondent urges us to adopt, recovery under UIM coverage is reduced by any amounts received from any liability policies, the insurance company will never have to pay out on a $25,000 UIM policy. Thus, under the respondent's position, an underinsured liability limit is an illusion because an insured will never be entitled to recover up to that limit. *See, e.g., Paape v. Northern Assurance Co.,* 142 Wis. 2d 45, 48, 416 N.W.2d 665 (Ct. App. 1987), where the insurer issued a policy for $15,000 worth of UIM coverage.

Consequently, we hold that coverage for the UIM policy involved in this case is available for that margin between the amount received by the appellant from the underinsured driver's liability policy and the actual damages suffered by the appellant. We find that a reasonable person in the position of an insured would understand the words "amounts payable" to be the equivalent of damages compensable because when purchasing UIM coverage, we believe that a reasonable

insured expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage.

■

Furthermore, this interpretation is consistent with the purpose of UIM ·coverage as announced by this court. The purpose of UIM coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries. *Schwochert,* 139 Wis. 2d at 346. As we have previously noted,

> While it was asserted ... that the protection afforded by underinsured coverage was in each case to be reduced by the amount of liability coverage carried by the underinsured motorist, we see no policy provision that so provides. It would not appear that a reduction of "any amount payable" by reason of the payment by another person liable effects a limitation of the potential liability under any coverage. It would appear, rather, that the amount payable reduction merely prevents a duplication of a payment made by another....

*Vogt v. Schroeder,* 129 Wis. 2d 3, 18 n. 7, 383 N.W.2d 876 (1986). "[U]nderinsurance benefits constitute the insurance coverage for damages in excess of the tortfeasor's insurance coverage." *Id.* at 32 (Steinmetz, J., concurring). "[T]he limit of the underinsurer's liability is for the amount of damages suffered by the insured in excess of the liability limits of the tortfeasor." *Id.* at 28–29.

Our approach in this case is similar to the approach followed by the Ohio Supreme Court in *Gomolka v. State Automobile Mutual Ins. Co.,* 15 Ohio St. 3d 27,

472 N.E.2d 700 (1984). In *Gomolka,* the insured (appellee) recovered the $100,000 liability coverage limit from the third party's automobile insurance carrier. The insured then made a claim against her own automobile insurer under her UIM coverage. The insurer (appellant) claimed that it was entitled to a $100,000 reduction in the amount it was required to pay under its UIM coverage. The appellant relied on language in its policy providing that the amount payable under its coverage shall be reduced by all sums paid by or on behalf of the third party.

The Ohio Supreme Court rejected this contention:

> The appellant argues, in effect, that the words, "any amount payable" should be interpreted to mean "the total amount of coverage provided, if payable." The appellee, on the other hand, would interpret "any amount payable" to mean "any damages compensable." We find this latter interpretation clearly to be the most reasonable.
>
> Appellant's "interpretation" is, in reality, an "insertion." State Auto would have the court read additional terms into its policy. The appellee's interpretation, however, equates "amount payable" to "damages compensable" by looking to the plain meaning of the policy's terms and by focusing on the nature and purpose of uninsured/underinsured motorist coverage. When purchasing this coverage, an insured expects to be protected against a loss caused by another that is not covered by that other person's insurer. Thus, an "amount payable" under uninsured/underinsured motorist coverage is an *amount of damages suffered* by the insured, which amount is greater than the insurance coverage held by the party causing the damages.

15 Ohio St. 3d at 29, 472 N.E.2d at 702–03 (emphasis in original).

In conclusion, we hold that an insurance company's payment to its insured under UM coverage becomes a payment under UIM coverage when, at some later date, the tortfeasor's insurance company admits liability on behalf of the tortfeasor and tenders its liability limits to the court. In addition, we hold that the reducing clause in the UIM provision of the insurance policy at issue in this case does not reduce UIM benefits recoverable under the policy's limits by the amount received by the insured from the underinsured driver's liability policy. Rather, the "amounts payable" from the UIM provision at issue are measured against the insured's total damages, and the reducing clause reduces UIM benefits by subtracting from the total damages sustained by the insured the amount received by the insured from the underinsured driver's liability policy. Therefore, we affirm the decision of the court of appeals in part and reverse in part and remand this case to the circuit court.

*By the Court.* The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

STEINMETZ, J. (*dissenting*). I dissent from the majority's decision and opinion.

The majority holds today that underinsurance reducing clauses will no longer have any effect in Wisconsin. The majority decision contravenes the very nature of underinsurance, allows recovery from an insurance policy with well-defined and unambiguous terms which plainly limits the coverage under such

circumstances, and judicially creates an absolute prohibition of reducing clauses notwithstanding a total lack of legislative intent to void such clauses in underinsurance policies.

In Wisconsin, every policy of insurance must contain uninsured motorist coverage. Sec. 632.32(4)(a), Stats. This section of the statutes also contains definitional phrases and legislative intent which give meaning to the term "uninsurance." However, the Wisconsin statutes do not require insurers to offer underinsurance and therefore this court must resort to the insurance policy and other legitimate sources to determine the character of underinsurance.

In this case, the policy purchased by Eileen Kaun defined an underinsured motor vehicle as follows: "'Underinsurance motor vehicle' means a land motor vehicle insured by a liability policy or bond at the time of the accident which provides bodily injury liability limits less than the limit of liability for this coverage." This is consistent with what I wrote in *Vogt v. Schroeder,* 129 Wis. 2d 3, 28-29, 383 N.W.2d 876 (1986) and is quoted by the majority: "[T]he limit of the underinsurer's liability is for the amount of damages suffered by the insured in excess of the liability limits of the tortfeasor." Majority opinion at page 671. When purchasing underinsurance, a person must predetermine what amount of coverage he or she wants available in the event of an incident in the future.

Underinsurance is not related to the total damages sustained by an insured because when the policy is purchased there is neither thought nor expectation of an accident with anyone. The maximum coverage or policy limit is just that and it is that for which a premium is charged. The coverage is not governed by the extent of an unknown injury but rather by the

maximum coverage purchased. In this the insured chooses the amount and has only to pay the premium for it. Underinsurance is not meant to fully compensate the victim under all circumstances, since the extent of injury is not known when the policy is purchased. The statement in *Vogt,* 3 Wis. 2d at 32, cited by the majority at page 671, "underinsurance benefits constitute the insurance coverage for damages in excess of the tortfeasor's insurance coverage" cannot be interpreted to mean all damages no matter what amount as the majority rules but only up to the amount of coverage. There is nothing inconsistent between what I wrote in *Vogt* and what I now write in *Kaun.*

Absent any legislative initiative concerning underinsurance, this court should view the character of underinsurance in determining the issue presented by the parties in this case. The character of underinsurance should not be changed by judicial decisions mandated years after the insurance contract was executed by the parties. A reducing clause in an underinsurance policy should be valid because of the very purpose and function of this type of policy; underinsurance guarantees payment only to the extent that recovery from the tortfeasor has not yielded the recovery to which the insured would otherwise be entitled under the underinsurance coverage. Put another way:

> [T]he coverage [underinsurance] is appropriately viewed and provided as a means of placing the insureds in the position they would have been in had the tortfeasor been insured by liability insurance with limits of liability equal to those selected by the purchaser of the underinsured motorist insurance applicable to the accident.

2 Widiss, Uninsured and Underinsured Motorist Insurance, 2d ed. sec. 41.7 (1987).

> By its very nature an underinsurance clause involves the existence of other insurance; but ... construing an underinsurance provision to provide additional insurance whenever the injured insured has not fully recovered his damages would be to render the term "underinsured" meaningless. The status of being underinsured is measured against another insurance policy, not against the injured party's damages.

*Kuehn v. Safeco Ins. Co. of America,* 140 Wis. 2d 620, 628, 412 N.W.2d 126 (Ct. App. 1987) (quoting *Grabski v. Finn,* 630 F. Supp. 1037, 1047–48 (E.D. Wis. 1986), (which held the underinsurance does not provide coverage where the limits are less than the tortfeasor's liability insurance limits.))

Furthermore, the majority opinion discounts the clear language of the policy issued. The clause under review in this case stated:

> Amounts payable will be reduced by payments:
> (1) made by the owner or operator of the *underinsured motor vehicle* or organization which may be legally liable;

This language unequivocally demonstrates that the parties intended the underinsurance policy amount to be reduced by payments made by the tortfeasor or his insurer. The majority (at page 669) states that if Badger Mutual's position is accepted, "the respondent [Badger Mutual] will not be providing the $50,000 of UIM benefits it indicated it would pay on the declarations page of its policy." Nowhere in the underinsurance policy did Badger Mutual declare that it would provide $50,000 in addition to amounts recovered from the

tortfeasor or his insurer. Quite to the contrary, the underinsurance policy contained the $50,000 figure immediately after the heading "Limit of Liability" which was then defined on the following two pages with a subsection plainly indicating that Badger Mutual's limit of liability was not in addition to funds recovered from the tortfeasor or on his behalf.

In this same vein, the majority states that "[underinsurers] will *never* pay the policy limit of its UIM policies." Majority opinion at pages 669–670. (Emphasis in majority opinion.) Obviously, something as important as the policy limit of an insurance policy requires definition. This underinsurance policy provided a definition of the policy limit, just as other terms of the insurance policy were defined, but the majority failed to consider it.

To support the statement that underinsurers will never pay the limits of an underinsurance policy, the majority cites an example which is facially convincing. Majority opinion at pages 669–670. It is true that an underinsurance policy with a limit of $25,000 would never protect the insured, because underinsurance is only effective when the tortfeasor has liability insurance, which by law must have a minimum limit of $25,000. However, this example is not relevant to the case at hand. There was no evidence submitted in this case showing that when $25,000 of underinsurance is provided, the insured pays an additional premium. In this case, the underinsured motorist coverage limit was $50,000 and the record does not show whether a premium was charged for the first $25,000 or not. Also the $25,000 lower limit would be protection in the event the insured had an accident with a driver from another state who carried liability coverage in an amount less than $25,000.

In an attempt to overcome the plain language of the policy, the majority, quoting *Gomolka v. State Automobile Mutual Ins. Co.,* 15 Ohio St. 3d 27, 472 N.E.2d 700, 702–03 (1984), majority opinion at pages 671–673) states that an insured's expectations when purchasing insurance should be given deference over the plain language of the insurance policy. A reasonable insured could not possibly have misunderstood the clear meaning of the terms of this contract.

The majority cites *Gomolka* as precedent; however, that case has no value in analyzing Wisconsin insurance law since Ohio Statute 3937.18 makes mandatory the offering of underinsured motorist coverage. Therefore, the Ohio legislature has taken over underinsured motorist, an action unlike the Wisconsin legislature. It is also interesting that in Ohio sec. 3937.18(E) allows an insurance contract to preclude stacking of uninsured motorist coverages contrary to our requirements in *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985) and *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985). This is how a state should allow insurance law to develop, not by judicial fiat.

In interpreting insurance coverage, in the past this court has consistently held that in the absence of stated legislative policy to the contrary, the extent of liability of an insurance company is based upon the contract entered into between the parties and must be governed by the contract's terms and conditions. *See Tischendorf v. Lynn Mut. F. Ins. Co.,* 190 Wis. 33, 42, 208 N.W. 917, 921 (1926); *Paape v. Northern Assur. Co.,* 142 Wis. 2d 45, 51, 416 N.W.2d 665 (Ct. App. 1987).

Just as the majority ignores the very character of underinsurance and the plain language of the insurance

policy, so too it ignores the underpinnings of previous cases in this area of the law.

The modern Wisconsin history of uninsured motorist coverage started with *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 190 N.W.2d 904 (1971). At that time, uninsured motorist coverage was not required by statute. The court held that the reducing clause was valid and not against public policy.

The same issue was presented in *Scherr v. Drobac*, 53 Wis. 2d 308, 193 N.W.2d 14 (1972). Scherr was injured at a time when uninsured motorist coverage was mandatory. Notwithstanding, the court determined that sec. 204.30(5)(a), Stats. (1967) (predecessor to sec. 632.32 (1977)) did not affect the validity of the reducing clause found in the plaintiff's uninsured motorist coverage.

Again in *Nelson v. Employers Mut. Casualty Co.*, 63 Wis. 2d 558, 567, 217 N.W.2d 670 (1974), this court was faced with the issue of whether an uninsurance policy's reducing clause was in derogation of sec. 204.30(5), Stats. The court indicated that the *Leatherman* and *Scherr* decisions controlled. Therefore, throughout the uninsured motorist coverage cases, this court has reiterated that reducing clauses are not violative of public policy, unless enforcement of the reducing clause caused the insured to receive less protection than mandated by the legislature.

In 1975, sec. 631.43(1), Stats., was created and reads:

> **Other Insurance Provisions. (1)** General. When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the

total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

In *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 26, 300 N.W.2d 875 (Ct. App. 1980), the court of appeals found the legislative prohibition of reducing clauses in uninsured motorist coverage was stated in sec. 631.43(1), Stats. With this legislative mandate, the issue became whether a particular insurance policy promised to indemnify. Only if the policy was an indemnification policy did sec. 631.43(1) apply which thereby would invalidate the uninsurance reducing clause. The court of appeals stated:

> [W]e determine that uninsured motorist coverage does not function as a pure liability contract but instead functions as an indemnification contract.
>
> Indemnity contracts require an insurer to indemnify or make whole the insured after he has sustained an actual loss, whereas a liability policy requires the insurer to shield the insured from making payment on the claim for which he is liable. G. Couch, Cyclopedia of Insurance Law sec. 44.4 (2d ed. R. Anderson 1963). Uninsured motorist coverage has been distinguished from liability insurance and recognized as a form of insurance which promotes indemnification of the injured party. 44 C.J.S. *Insurance* sec. 48.1 (Supp. 1980); 7 Am. Jur. 2d *Automobile Insurance* sec. 293 (1980).

We conclude that enactment of sec. 631.43, Stats., provides the legislative mandate which was missing at the time the *Leatherman, Scherr,* and *Nelson* cases considered the public policy considerations governing reducing clauses. Accordingly, we conclude that sec. 631.43(1) must be read together with sec. 632.32(3) to permit the stacking of uninsured motorist insurance coverages

The court of appeals held that the reducing clause was void on the basis of two statutory provisions, secs. 631.43 and 632.32(3), Stats., which required the offering of uninsured motorist coverage.

In *Tahtinen,* 122 Wis. 2d at 163, this court relied on *Landvatter* and stated:

Subsequently, [after the uninsured motorist coverage became mandatory] the legislature enacted sec. 631.43(1), Stats., which the court of appeals in *Landvatter* found provided "the legislative mandate which was missing at the time the *Leatherman, Scherr* and *Nelson* cases considered the public policy considerations governing reducing clauses.

The court further stated in *Tahtinen*: "These cases clearly demonstrate that the validity of reducing clauses in uninsured motorist coverage is controlled by legislative mandate, not by public policy considerations." *Id.* at 164. The court went on to state: "that the court of appeals in *Landvatter* correctly held that sec. 631.43(1) is applicable to uninsured motorist coverage." *Id.* at 169. It is obvious that such decision was not only influenced, but also controlled, by the fact that uninsured motorist coverage was required by the legislature. The court in *Tahtinen* did not find reducing clauses prohibited by sec. 631.43(1), Stats., for all coverages but only for required uninsured motorist coverage.

That the court meant to apply sec. 631.43(1), Stats., to prohibit reducing clauses in uninsured motorist coverage became more clear in *Welch,* 122 Wis. 2d at 173, decided the same day as *Tahtinen.* In *Welch* the court held:

> We hold, consistent with *Tahtinen v. MSI Insurance Company,* decided on this date, that the legislature, in enacting Wisconsin's stacking statute, voided reducing clauses which attempt to prohibit the stacking of multiple policy coverages of *uninsured motorist* protection issued by the same insurer to the same insured. (Emphasis added.)

*Welch* repeated the language of *Tahtinen* as follows: "[t]his statute clearly and unambiguously voids reducing clauses which attempt to prevent stacking of *uninsured motorist* benefits." *Id.* at 176. (Emphasis added.)

This position was repeated in *Welch* as follows: "We held that the legislature, in enacting sec. 631.43(1), Stats., clearly and unambiguously voided reducing clauses which attempt to prevent stacking of *uninsured motorist* protection." *Id.* at 176. (Emphasis added.)

The court in *Welch* recognized public policy established by the legislature due to uninsured motorist coverage being required by statute as follows: "We hold that 'drive other car' exclusionary clauses are contrary to the legislative policy and express legislative intent embodied in this state's uninsured motorist and stacking statutes." *Id.* at 181. Obviously, the court believed the two statutes integral for its holding—the "anti-stacking" statute and statute requiring uninsured motorist coverage.

The uninsured motorist coverage is a statutory protection created by the legislature and is not an area

of liability originating in this court and therefore subject to change by this court. Underinsured motorist coverage is not a statutorily required coverage and is a matter of private contract with no connection with sec. 631.43(1), Stats.

In *Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 592-93, 405 N.W.2d 327 (1987), the court made it clear it was holding reducing clauses illegal in policies as applied to the uninsured motorist coverage provisions. The court stated:

> If the purpose of the uninsured motorist statute is to be achieved, the plaintiff must be entitled to the proceeds of the uninsured motorist coverage without reductions that would not have been available had the uninsured motorist been insured.

The court in *Nicholson* also stated:

> We hold that the reducing provision violates sec. 632.32(4)(a). This holding is mandated by the text of sec. 632.32(4)(a), which requires the policy to include uninsured motorist coverage, and the public policy underlying sec. 632.32(4)(a), which puts the injured party in the same position as if the uninsured tortfeasor had been insured.

*Id.* at 594.

It could not be more clear then that the court was holding that reducing clauses defeated the statutory obligation to compensate and therefore such clauses affected negatively the statutorily mandated coverage of uninsured motorists.

Reducing clauses also were held unenforceable because they violated the legislative mandate expressed in sec. 631.43(1), Stats. The court held in *Nicholson* "that the Home Insurance policy reducing clause

violates sec. 632.32, Stats. 1979." *Id.* at 603. (Footnote omitted.) Section 632.32 is the uninsured motorist provision.

Crystal clear in *Nicholson,* the court stated that reducing clauses could not be allowed since the legislature had required uninsured motorist coverage. The court stated:

> If the legislative objective *in requiring uninsured motorist coverage* is to be fulfilled, the injured party must be entitled to the proceeds of uninsured motorist coverage free from any reductions contingent solely on the fact that a negligent uninsured motorist was a tortfeasor. (Emphasis added.)

*Id.* at 604.

Finally in *Nicholson,* the court stated, "Any policy provisions effectively reducing *the coverage required by the statute* are void." *Id.* at 605. (Emphasis added.) The *Nicholson* decision was that of six justices of this court with only this writer dissenting and it was decided as recently as 1987.

The last time this court had the subject of underinsured motorist coverage before it was in *Schwochert v. American Family Ins.,* 139 Wis. 2d 335, 407 N.W.2d 525 (1987), a unanimous decision. The Schwocherts carried underinsured motorist coverage on one of their two vehicles, but this coverage was on the vehicle not involved in the accident. The "drive other car" exclusion on the non-accident vehicle kept the underinsured motorist coverage from being applied to the accident car. Under similar circumstances, *Welch* allowed such a transfer of uninsurance. In *Schwochert* the court clearly distinguished between uninsurance and underinsurance. It determined that underinsurance is solely a matter of contract between the insurer and insured. *Id.*

at 348. The Schwocherts claimed their liability coverage was insufficient and that their underinsurance motorist coverage should be available. An important issue of the case was whether uninsurance principles could be applied to underinsurance cases. This language of *Schwochert* cannot be dismissed as dicta.

The court stated: "Underinsured motorist coverage has not been made mandatory under sec. 632.32(4) or any other statute. Therefore, the holding of *Welch* does not encompass underinsured motorist coverage." *Id.* at 347. In *Schwochert,* the court interpreted and applied *Welch* as follows:

> The majority opinion of *Welch* makes it clear that the uninsured motorist coverage mandated by statute must be made available under all automobile policies issued in Wisconsin and, therefore, any policy provision that would have the effect of thwarting that legislative purpose was invalid. This conclusion was arrived at by finding that the "drive other car" provision was invalid to bar coverage due to the combined legislative intent of sec. 632.32(4), Stats., uninsured motorist coverage, and sec. 631.43(1), the stacking statute.
>
> The language of *Welch* is clear that the ruling was on the efficacy of "drive other car" exclusions to negate statutory coverages only.

*Id.*

Precedent in *Landvatter,* 100 Wis. 2d at 25, was established by the court of appeals in distinguishing between liability coverage and indemnity coverage. The majority has relied on *Landvatter* for precedent since *Tahtinen,* but ignores it today.

I dissent from the majority decision and rationale of its opinion. I will not convert a private contract of insurance to a social contract of recovery—that should

be left to the legislature to effectuate if believed desirable.

I am authorized to state that JUSTICE WILLIAM G. CALLOW joins this dissenting opinion.