ACUITY, a Mutual Insurance Company,
Plaintiff-Appellant,†

v.

Kishan BAGADIA, UNIK Associates, LLC,
Symantec Corporation, and Quarterdeck
Corporation, Defendants-Respondents.

Court of Appeals

*No. 2006AP1153, 2006AP1974. Submitted on briefs
March 5, 2007.—Decided April 25, 2007.*

2007 WI App 133

(Also reported in 734 N.W.2d 464.)

† Petition to review was granted 9/13/07.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Arthur P. Simpson* and *Michelle D. Wehnes* of *Simpson & Deardorff, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Christopher F. Stoll* of *Heller Ehrman LLP* of San Francisco, CA, and *Michelle M. Umberger* of *Heller Ehrman LLP* of Madison.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. This is a liability insurance coverage action. The underlying lawsuit, which was litigated in federal court in Oregon, involved pirated software. Symantec Corporation and Quarterdeck Corporation[1] obtained a judgment against UNIK Associates, LLC for trademark counterfeiting and copyright infringement. Now Acuity seeks a declaration that its policy with UNIK does not cover the damages in the Oregon suit, and alternatively that if it does cover those damages, they should be reduced by the amount Symantec has already received from another insurer. The circuit court found Acuity liable for the entire amount of damages, and we affirm. The Oregon court's decision supports Symantec's claim that the trademark and copyright judgments constitute "advertising injuries" committed by UNIK as defined in the Acuity policy. And while Acuity ultimately may not be responsible for the entire amount of the judgment, the record and parties before us do not allow us to address the allocation of liability between insurers.

¶ 2. The following facts are taken from the Oregon court's written decisions. Symantec is a software

---

[1] For simplicity, we will generally refer to both Symantec and Quarterdeck as "Symantec."

maker that owns several trademarks, including SYMANTEC, NORTON SYSTEMWORKS, NORTON ANTIVIRUS, NORTON UTILITIES, and NORTON GHOST; Quarterdeck owns the trademark CLEANSWEEP. The two corporations also own the copyrights for their various programs, which Symantec sells in suites called SystemWorks.

¶ 3. UNIK, based in Wauwatosa, sold computer software to resellers. It purchased the software at liquidation or closeout sales at discounted prices. The Oregon court found that UNIK "advertised the System-Works® software through trade magazines, telephone marketing, direct mailings, and supplying samples to interested buyers." UNIK both received and shipped the SystemWorks disks in plain white envelopes without manuals or retail boxes.

¶ 4. When a potential customer requested SystemWorks disks from UNIK, UNIK would contact its suppliers to see what was available. The supplier would send a sample disk to UNIK, which UNIK would inspect to make sure it appeared genuine before sending it on to the potential customer. If the customer approved the sample, UNIK then ordered the rest of the shipment from the supplier. The disks contained copies of Symantec's copyrighted programs as well as its trademarks.

¶ 5. Symantec sued UNIK in federal court in Oregon alleging copyright infringement and several trademark claims. After the Oregon litigation began, Acuity commenced the present action in the Waukesha circuit court, seeking a declaration that it had no duty to defend or indemnify UNIK in the Oregon suit. The circuit court found that Acuity had a duty to defend, but declined to decide the coverage issue until the Oregon litigation was completed. The Oregon court ultimately

granted summary judgment to Symantec on the copyright and trademark claims, finding that the disks were not authorized. The Oregon court awarded Symantec actual damages of $272,226 for the copyright claims and $360,000 for the trademark counterfeiting claims, plus attorney fees and costs of $326,027.40. After the judgment in Oregon, the Waukesha circuit court granted summary judgment to Symantec on coverage. It entered judgment for the full amount of damages, costs and fees in the Oregon suit. Acuity appeals.

■

¶ 6. We review a grant of summary judgment de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The policy at issue indemnifies UNIK against "*[a]dvertising injury* caused by an offense committed in the course of advertising your goods, products or services." It defines "advertising injury" as an injury arising out of, inter alia, "[m]isappropriation of advertising ideas or style of doing business," or "[i]nfringement of copyright, title or slogan." Courts interpreting similar provisions have developed a three-part test for coverage. In order to determine that the policy covers the Oregon damages, we must answer "yes" to three questions: (1) Did the damages arise from an enumerated offense in the policy? (2) Did UNIK engage in advertising? (3) Is there a causal connection between UNIK's advertising and the damages? *See Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 26, 261 Wis. 2d 4, 660 N.W.2d 666. We will address the copyright infringement damages and the trademark counterfeiting damages in turn.

■

¶ 7. As Acuity concedes, copyright infringement is an enumerated offense under the policy. UNIK in-

fringed Symantec's copyright by distributing unauthorized disks of SystemWorks software. We move therefore to the second question: what conduct by UNIK constitutes advertising? "Generally speaking, advertising refers to calling the public's attention to a product or business by proclaiming its qualities or advantages in order to increase sales or arouse a desire to buy or patronize." *Id.*, ¶ 42. Courts are divided between a narrow and a broad construction of advertising, with some requiring "widespread announcements or distribution of promotional materials directed at the 'public at large'" and others including "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business." Christopher L. Graff, *Insurance Coverage of Trademark Infringement Claims: The Contradiction Among the Courts, and the Ramifications for Trademark Attorneys,* 89 TRADEMARK REP. 939, 963–64 (1999) (citations omitted). Wisconsin has not elected between these two approaches. *See Fireman's Fund,* 261 Wis. 2d 4, ¶¶ 43–44. Some of UNIK's promotional activities clearly meet either definition: for example, the Oregon court found that it "advertised the SystemWorks® software through trade magazines." A closer question is whether UNIK "advertised" when it sent samples of its product to potential buyers. This question is crucial because under the policy language there is coverage only for an offense committed "in the course of advertising." While the magazine advertisements used Symantec's trademarks, the advertisements did not violate Symantec's copyrights because it is the programs themselves, and not their names, that are copyrighted. Thus, to find coverage for the copyright claims, we must determine whether UNIK's distribution of the programs themselves, as samples, constituted "advertising."

¶ 8. Unlike *Fireman's Fund*, this case thus requires us to choose between the broad and narrow definitions of advertising. Plainly UNIK's sample-sending was not directed at the "public at large," and so would not qualify under the narrow definition. However, the act of sending a sample product to a potential buyer does fit within the broader definition: it is a statement ("what I propose to sell you will be just like this item") made in connection with the solicitation of business.

■■

¶ 9. The choice between the broad and narrow understandings is made easy by one of the rules of insurance contract interpretation: any ambiguity in a policy must be construed in favor of coverage. *Kaun v. Industrial Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 669, 436 N.W.2d 321 (1989). A term is ambiguous where it is capable of being understood in two or more different senses by reasonably well-informed persons. *Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 442, 573 N.W.2d 522 (1998). In the context of this case, we conclude that both the broad and narrow meanings of "advertising" are reasonable. In particular, because UNIK was in the business of selling to resellers, a limited market, it does not make sense to say that it could only "advertise" by addressing its communications to the public at large. *See Amway Distribs. Benefits Ass'n v. Federal Ins. Co.*, 990 F. Supp. 936, 945 (W.D. Mich. 1997). We therefore apply the broad definition of "advertising" and find that UNIK advertised its product by sending samples to potential customers.[2]

---

[2] In *Farmington Casualty Co. v. Cyberlogic Technologies, Inc.*, 996 F. Supp. 695, 703 (E.D. Mich. 1998), the court took the opposite position, stating that a sample "does not convey an

¶ 10. We must therefore reach the final question: was there a "causal connection" between UNIK's advertising and the harm to Symantec? In *Fireman's Fund*, our supreme court stated that advertising need not be the sole cause of the harm, but only "contribute materially" to it. *Fireman's Fund*, 261 Wis. 2d 4, ¶¶ 52–53.[3] The question we must answer, therefore, is whether UNIK's sending of the samples to potential customers "contributed materially" to the harm it caused Symantec by its copyright infringement.

¶ 11. Acuity points out that the Oregon court made only one reference to UNIK's sample distribution in its decision, and also stated that "[t]he exclusive right at issue here is the distribution of copies of the copy-

---

independent message about the product; it simply is the product." It stated that a contrary holding would "invoke advertising injury coverage whenever the producer of an allegedly infringing product simply distributes free samples or otherwise makes demonstrations of that product" and that this would "expand the coverage for advertising injury far beyond what was reasonably contemplated by the parties." *Id.* at 704. However, we must determine the intent of the parties by interpreting the language of the contract, which in this case includes the undefined term "advertising." In the absence of any limiting definition, we must apply any reasonable meaning of the term that affords coverage, and we think it is clear that sending samples to potential customers falls within the reasonable meaning of "advertising."

[3] Acuity argues that the "material contribution" standard applies only to the duty to defend analysis and not to duty to indemnify. *Fireman's Fund* was a duty to defend case. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 2, 261 Wis. 2d 4, 660 N.W.2d 666. But this fact was not material to the court's discussion of the "causal nexus" issue, *see id.* at ¶¶ 52–53, and we see no reason why the standard should differ in an indemnity case. We reject Acuity's argument and hold that the causal standard is the same in both contexts.

righted work to the public *by sale.*" (Emphasis added.) Additionally, the Oregon court set Symantec's copyright damages by calculating UNIK's profits from the infringing disks. Thus, Acuity argues, UNIK's sales of the software are the *sole* cause of Symantec's damages, and its distribution of sample disks therefore cannot be a contributing factor.

¶ 12. There are problems with each of Acuity's arguments. First, the Oregon court's opinion *does* describe UNIK's sending out of samples. Why would the court have done this if it did not consider the practice relevant to its decision? A court need not state a fact repeatedly in order for it to be significant. Second, Acuity misreads the Oregon court's statement that distribution by sale is the "exclusive right at issue." "Exclusive right" is a term from the copyright statute; it means a right belonging exclusively to the holder of a copyright, such as the right to distribute copies. *See* 17 U.S.C. § 106(3) (2000). That is, it is not that the court was basing its decision exclusively on the disk sales, but that the right to sell the disks belonged exclusively to Symantec.

■

¶ 13. We acknowledge that the ultimate harm to Symantec was UNIK's sale of the unauthorized software. However, UNIK's practice of offering (also unauthorized) samples to potential customers contributed to that harm by convincing the customers that the software was the product that they wanted. This is thus not a case where the advertising only exposed the infringer's wrongdoing. *See Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219, 1223 (9th Cir. 1996) ("[A]*dvertising activities* must *cause* the injury—not merely expose it."). When UNIK advertised by distributing sample disks violating Symantec's copyright, it

made its harmful sales more likely. Further, the copyright violation was essential to the advertising; without it, the samples could not serve their purpose of convincing the potential customer to buy. We therefore agree with the circuit court that UNIK violated Symantec's copyright in the course of advertising, and that this violation contributed materially to Symantec's injury. The copyright infringement damages are covered by the policy.

¶ 14. Turning to the trademark claim, we must answer the same three questions we answered for the copyright claim, beginning with whether trademark infringement is an enumerated offense under the standard CGL policy language at issue here. *Fireman's Fund* noted that this question, like the definition of "advertising," has divided the courts nationwide. *Fireman's Fund*, 261 Wis. 2d 4, ¶ 6 n.3. The *Fireman's Fund* court did not need to decide which side of that divide Wisconsin falls on because the policy there included "infringement of trademark" as an enumerated offense. *Id.* The policy here does not, and so we must decide whether trademark infringement is included within another enumerated offense: "infringement of copyright, title or slogan."

¶ 15. Symantec submits that the plain meaning of the word "title" encompasses the trademarks in this case; that is to say, NORTON SYSTEMWORKS, NORTON ANTIVIRUS, etc., are reasonably described as the "titles" of the software programs they name. For support, Symantec relies on *Charter Oak Fire Insurance Co. v. Hedeen & Cos.*, 280 F.3d 730 (7th Cir. 2002). There, applying Wisconsin law, the Seventh Circuit found coverage for a trademark infringement claim under the same clause at issue here, stating that " 'title' refers to names and related trademarks." *Id.* at 736 (citation omitted).

239

¶ 16. Acuity relies chiefly on *Fireman's Fund*, arguing that without an explicit inclusion of "infringement of trademark" as an enumerated offense, as in that case, we should conclude that the remaining language does not encompass trademark infringement. We quote Acuity's brief: "If ACUITY wanted to broaden its advertising injury definition to include trademark infringement like the insurer in *Fireman's Fund*, ACUITY could have done so." True, though given the large number of courts that have held that trademark infringement is included in infringement of title, Acuity would have been wise to explicitly *exclude* trademark from its definition if it did not intend to cover it, as other insurers have. *See Native American Arts, Inc. v. Hartford Cas. Ins. Co.*, 435 F.3d 729, 733 (7th Cir. 2006) (describing one such policy).

¶ 17. As with the meaning of "advertising," the one thing that is clear from the cases is that there is widespread disagreement over whether "infringement of title" includes trademark infringement. *See, e.g., Charter Oak*, 280 F.3d at 736. *But see, e.g., ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256, 259 (6th Cir. 1999). We agree with the *Charter Oak* line and hold that NORTON SYSTEMWORKS, NORTON ANTIVIRUS, etc., are reasonably described as the "titles" of the programs they describe, and that trademark infringement is therefore an enumerated offense under the policy.[4]

¶ 18. As to the second element, UNIK's advertising activity, the Oregon court found that UNIK adver-

---

[4] Because we have determined that trademark infringement is an "infringement of title," we need not address Symantec's argument that it is also a "misappropriation of advertising ideas or style of doing business."

tised the SystemWorks software through trade magazines, telephone marketing, and direct mailings. The summary judgment record shows that the magazine advertisements included the use of at least some of Symantec's trademarks.[5] Acuity argues that the court did not find that UNIK "proclaimed any qualities or advantages of the Symantec software." *See Fireman's Fund*, 261 Wis. 2d 4, ¶ 42. Of course it did not—why would it substitute the definition of the word for the word itself unless there was some reason to do so? The Oregon court found that UNIK advertised the software, and it is plain that it did.

■

¶ 19. This brings us to the third question: Did UNIK's infringement of Symantec's trademarks in its advertising contribute to Symantec's harm? There are two elements of a Lanham Act trademark infringement claim like the one at issue here: a plaintiff must show that a trademark exists and that the defendant used the mark in a way likely to create consumer confusion. *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000). The central element of trade-

---

[5] Acuity contends that when deciding coverage, we may not look at materials other than the Oregon court's findings in the underlying action. It cites *Production Stamping Corp. v. Maryland Casualty Co.*, 199 Wis. 2d 322, 331, 544 N.W.2d 584 (Ct. App. 1996), and *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995), but neither case supports this claim. We do not find any relevant language in the cited page of *Production Stamping*, and *Grinnell Mutual* merely states that the duty to indemnify can only be determined once the underlying suit is resolved, and says nothing about what materials a court may consider. Of course, the findings in the underlying case are central to determining coverage, but there is no reason why a court cannot look to other parts of the record in its effort to understand the basis and meaning of the findings.

mark infringement is that "the similarity of the marks is likely to confuse customers about the source of the products." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citation omitted). Obviously, by using Symantec's trademarks in its advertising, UNIK created consumer confusion: it gave the impression that UNIK was selling legitimate Symantec software when it was not. The court did not make an explicit finding linking the advertisement to consumer confusion, but it did not need to do so because UNIK had already conceded that consumer confusion was a likely result of its actions.

¶ 20. Acuity contends that the Oregon court based its finding of liability on the *sale* of the disks, rather than UNIK's advertising. In support, it notes that the court granted summary judgment only after rejecting UNIK's claim that it might not have sold all of the disks at issue. This is not dispositive. The court said: "[UNIK] contests neither Symantec's ownership of the trademarks nor the use of the trademarks in a manner likely to create consumer confusion. Its argument against summary judgment is . . . that there are factual issues concerning the source of the infringing copies . . . . I find that no such factual issues exist . . . ." A party resisting summary judgment will often try to demonstrate that material facts remain in dispute, as UNIK was apparently doing here. That the court rejected this attempt with respect to the disks does not mean that the disks were the only infringements of trademark that it considered.

¶ 21. Further, it is not correct, as Acuity claims, that the court awarded trademark damages based on UNIK's sales. Though the parties stipulated to an actual damage amount based on UNIK's sales, Syman-

tec elected to receive statutory damages for the trademark violations, based upon a flat $60,000 per mark, for a total of $360,000.

¶ 22. But even if it were true that the Oregon court awarded trademark damages *only* for the sales of the disks, this would not carry the day for Acuity. As we said in our discussion of the copyright claims, the question is whether the infringements in the advertising *contributed to* the harm Symantec suffered. UNIK's use of Symantec's trademarks in its advertising plainly *did* contribute to Symantec's harm: it communicated that UNIK was selling Symantec products, when it was not. The advertising served to convince potential buyers to purchase infringing disks from UNIK, rather than legitimate ones from authorized sellers. This consumer confusion directly harmed Symantec, whether that harm is measured by disks sold or by trademarks infringed.

¶ 23. Indeed, some courts have held that, since consumer confusion is an essential element of trademark infringement, trademark infringement claims satisfy the "causal nexus" requirement for advertising injury as a matter of law. *See, e.g., Poof Toy Prods., Inc. v. U.S. Fid. and Guar. Co.*, 891 F. Supp. 1228, 1235–36 (E.D. Mich. 1995). We need not decide this question because it is clear from the record that UNIK's advertising in violation of Symantec's trademarks contributed to Symantec's harm.

¶ 24. We therefore affirm the circuit court's holding that Acuity's policy indemnified UNIK against all of the claims in the Oregon suit. Acuity notes, however, that another insurer, Continental Casualty Company, has already paid Symantec a portion of the judgment pursuant to its insurance policy with UNIK. Acuity

243

argues that its liability to Symantec should be reduced by the amount Continental paid. Symantec does not dispute that it received the payment from Continental, but points out that Continental has reserved its right to contest coverage. Both parties present us with case law regarding contribution, subrogation, and the collateral source rule. We agree with the circuit court that it would be inappropriate to allow Acuity an offset for Continental's payment. Continental made its payment while denying liability and reserving the right to seek a judicial determination that its policy does not cover the damages in the Oregon suit. Continental is not a party to this action, and there has apparently been no final determination of Continental's legal obligations to Symantec. It may well be that ultimately Acuity is responsible for less than all of the judgment, but the record before us (which does not even include the Continental policy) does not allow us to determine who owes what. Though Acuity has claimed that it would be a waste of judicial resources to require further litigation of this issue, we cannot decide a claim that has not been properly developed.

*By the Court.*—Judgment affirmed.